## MARCH TERM, 1867.

JAMES B. STAATS and wife, appellants, and ZACCHEUS BERGEN and JAMES L. BERGEN, respondents.

1. A trustee will not be permitted to derive any profit from the use of the trust funds in his hands.

2. It is the universal rule, that a trustee must not put himself in a position in which he will be tempted, from the influence of self-interest, to take advantage of his *cestui que trust*.

3. A purchase of land at a sheriff's sale, by a trustee, on a bill on a mortgage held by him in trust, his bid not being sufficient to pay off such mortgage, and the land sold being subject to two other mortgages in which the *cestui que trust* had an interest, will be declared, in equity, to enure to the benefit of the *cestui que trust*.

In the year 1840, Abraham I. Staats, father of the complainant, James B. Staats, died intestate, leaving, surviving him, his widow, Mary Staats, and three sons, who were his only children.   By an agreement between the said widow and the sons, the sum of one thousand dollars was placed in

the hands of her brother, Zaccheus Bergen, the defendant, as trustee, the interest of which was to be paid to her during her life, in lieu of dower, and after her decease, the principal was to be paid equally to her said three sons. Upon the receipt of this money, Mr. Bergen executed a declaration of trust, in conformity to the above arrangement. One third of this trust fund was subsequently loaned by the said defendant to James B. Staats, the complainant, who, to secure this loan, executed to Mr. Bergen, a mortgage upon his farm of about ninety-two acres, in Somerset county. In March, 1859, this farm, which was subject to other encumbrances, was sold by virtue of a foreclosure suit, and was purchased by one John A. Staats, who, in making payment of the purchase money, executed four mortgages on the farm, as follows, viz. one to William S. Cook, for $1200; one to said Zaccheus Bergen, for $333.33; one to P. P. Quick, for $1000; and one to J. M. Mann, for $800. The mortgages to Quick and Mann, were given to secure moneys which they respectively held in trust for the said Aletta Ann Staats, one of the complainants. After this arrangement, Mr. Bergen, still holding the last mentioned mortgage, executed in writing, a second declaration of trust, which is as follows, to wit: "This writing witnesseth that I, Zaccheus Bergen, of the township of Hillsborough, and county of Somerset, hold a bond and mortgage given by John A. Staats and his wife, on a farm in Bridgewater township, in said county, to secure the sum of $333.33, with interest thereon, as trustee, to be appropriated by me to the support of Mary Staats, as far as may be necessary during her natural life, and to the payment of her funeral expenses; and within one year after her decease, I promise, and bind myself, my heirs, executors, and administrators, to pay the residue that may remain in my hands, to James B. Staats, of Newark, in the county of Essex, his heirs and assigns."

On the 9th of February, 1861, the interest in this trust fund was assigned by James B. Staats to his son, Abraham I. Staats, in trust for the said Aletta Ann Staats.

The above named J. M. Mann, having filed a bill to fore-

close the mortgage held by him as trustee of Mrs. Staats, as before mentioned, a decree was made to sell the farm, to raise the money due on the said four mortgages, in the order, and to the amounts following: first, William S. Cook, $1363.06; second, Zaccheus Bergen, $372.82; third, P. P. Quick, $1203.-34; fourth, J. M. Mann, trustee, &c., $969.39; with interest on said sums from 28th March, 1861. Under an execution on this decree, the said farm was exposed to sale by the sheriff, on 27th May, 1861, and was struck off to said Zaccheus Bergen for $1850, and the sheriff accordingly executed to him a deed for the property.

After the sale, Aletta Ann Staats requested Mr. Bergen to convey the farm to her, because, as she alleged, he had agreed to buy it for her at the sheriff's sale, and also because at such sale he was acting as trustee, and she was entitled to the moneys secured by the mortgage so held by him in trust, and to satisfy which, with other encumbrances, the farm was sold; she offering, if Mr. Bergen would convey to her, to repay him what he had paid for it, and something in addition for his trouble. Mr. Bergen refused, and claimed to hold the farm as his own, and afterwards conveyed an undivided half to his son, James L. Bergen, one of the defendants in this case, against whom the bill has been taken as confessed.

The prayer of the bill was, that the defendants might be decreed to convey the farm to the said Aletta Ann Staats, upon her paying to Z. Bergen the amount he had paid for it, or, if the court should deem it more equitable, that he might be compelled to pay her the said $333.33, with interest.

The decree was, "that the complainant, Aletta Ann Staats, is entitled to have the farm and premises, with the appurtenances, mentioned and described in the said bill of complaint, conveyed to her by the said defendants, Zaccheus Bergen and James L. Bergen, upon paying to the said defendant, Zaccheus Bergen, the amount he gave for the said farm and premises, and such further sums as the defendants have expended in discharge of liens upon the same, or for repairs, or

proper or permanent improvements, and taxes, with interest, after deducting therefrom the rents, issues, and profits of said farm, since the purchase of the same by the said defendant, Zaccheus Bergen. And that it be referred, &c. See *ante, p.* 297.

*Mr. E. W. Scudder,* for appellants.

*Mr. Ransom,* for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE. It will be observed from the narration of facts which precedes this opinion, that the defendant, Zaccheus Bergen, at the time he became the purchaser, at the sale by the sheriff, of the premises in question, held the second mortgage upon the land, as the trustee of Mrs. Staats, and that upon a bid made by him, of a sum which was not sufficient to pay such mortgage, together with the prior encumbrance, the farm was struck off to him. The effect of such sale, therefore, on the rights of the *cestui que trust,* was to render valueless, so far as the land sold was concerned, not only the mortgage held for her by the defendant, but also the two subsequent mortgages, the equitable interest in which belonged to her; the one being for her benefit, in the hands of Mr. Mann, and the other, in those of Mr. Quick. Under these circumstances, it is insisted, that the defendant was not in a position in which he could lawfully purchase this property for his own benefit.

The general principles of equity touching this subject, though somewhat ventilated, were not seriously called in question in the discussions of counsel. It was assumed on the one side, and admitted on the other, that the general rule applicable to sales is, that if a trustee, or a person standing in any similar capacity, sell a trust estate, and become himself interested, either directly or indirectly, in the purchase, the *cestui que trust* is entitled, as of right, to have the property resold, or, at his election, to acquiesce in the sale; and

3 A *

that it makes no difference, in the application of the rule, that the sale was at a public auction, *bona fide*, or for a fair price. To this extent there was no controversy; but it was insisted, that this principle did not apply to the facts of the case before the court. The argument was that, in the present instance, the property which was sold, did not belong to the *cestui que trust*, and that, consequently, the defendant was free to make the purchase.

To adopt this theory, would be to abandon the principle upon which most of the adjudicated cases have been founded, merely on the ground that the circumstances of such cases differed somewhat from the facts before us. But we must look at the reason of the rule, and see if the present occasion is within such reason. The rule is one of public policy. The trustee is not prevented from bidding for property which he himself sells, on the ground simply of a supposition of actual fraud, but because the law has established, as an inflexible rule, applicable to every emergency, that he shall not place himself in a situation in which he will be tempted to take advantage of his *cestui que trust*. This is a wise public regulation, intended to protect a species of property, which, otherwise, would be constantly exposed to peculiar hazard. The trustee, therefore, must submit to this regulation, and if he does an act in violation of it, no matter how pure his intention may be, such act is voidable at the instance of the person whom he represents. "However innocent the purchase may be in the given case," says Chancellor Kent, in *Davoue* v. *Fanning*, 2 *Johns. Ch. R.* 260, "it is poisonous in its consequences. The *cestui que trust* is not bound to prove that the trustee has made a bargain advantageous to himself. The fact may be so, and yet the party not have it in his power, distinctly and clearly to show it. There may be fraud, as Lord Hardwicke observed, and the party not be able to prove it." At these sales, then, the trustee is forbidden to purchase, because his interest, as such purchaser, is opposed to the interest of his *cestui que trust*, and he acts, therefore, under a bias in his own favor. Nor does this rule

rest, to any considerable extent, in the fact that, in a particular line of cases, the trustee has peculiar opportunities for the practice of fraudulent acts, with regard to the property in his charge. The rule, to be efficacious, must be general, and the law implies, therefore, that in all cases of trusts, such opportunities may exist, and consequently the prohibition is universal, that he may not do anything which, while it is an advantage to himself, is, or may be, a loss to the trust estate. So jealous is the law upon this point, that a trustee may not put himself in a position, in which to be honest must be a strain upon him. The general rule, therefore, applies, not merely in those cases in which the confidence is absolutely betrayed, but when the circumstances are such that there was a temptation to violate it. *Moore* v. *Moore*, 4 *Sandf. Ch. R.* 37. I think, upon correct principle, a trustee, in no case, nor in any crisis, can become the purchaser of property, when the fact of his making such purchase, has a tendency to promote his own interest, at the expense of his *cestui que trust*. This, it is conceived, is the groundwork of the decisions, in England, and in this country.

Applying this test to the purchase in question, it is plain that it is invalid as against the complainant. As a bidder at the sheriff's vendue, the interest of the defendant was directly antagonistic to that of the complainant. A low price was the gain of the defendant, but it was, in the same ratio, a loss to the complainant. The property was struck off for a sum, not sufficient to pay the mortgage which it was the duty of the defendant to uphold and protect; he made money by defeating, in this transaction, that mortgage, *pro tanto*. Under the last declaration of trust executed by him, he appears, as it would seem, to be under no liability to make good the fund invested, if the security proved insufficient, so that his position, as a competitor at the sheriff's sale, was squarely opposite to his fiduciary duties. If he has made a profitable bargain, (and as he strenuously refuses to surrender his purchase, it is a fair presumption that he has done so,) the result has been attained by the sacrifice of the trust

fund.   As the guardian of the property of the complainant,
it was his duty to use every reasonable endeavor to make the
land produce the largest price.   Did he perform an obliga-
tion which it was an advantage to him to neglect?   To omit
the discharge of such duty was a fraud, in the eye of a court
of conscience.   "It is not enough," says the Chancellor, in the
case of *Whelpdale* v. *Cookson*, 1 *Ves., sen.*, 9, "for the trustee to
say, you cannot prove any fraud, as it is in his own power to
conceal it."   The observation applies to every case of this
strain, and to none more than to the one under consideration.
To hold this transaction valid, as against the *cestui que trust*,
would seriously impair the general principle of equity above
enounced, which has been the guide to so many decisions,
and which is so eminently essential to the preservation of a
perfect integrity in the administration of trust estates.

The court is clearly of one mind, that the complainant is
entitled to relief.

What that relief should be, has been a subject about which
we have experienced more difficulty.   The master who heard
the case for the Chancellor, thought that the complainant
had a right to take the bargain off the defendant's hands,
and to be substituted in his place; and the court below ac-
cordingly decreed a conveyance.

It is now urged, by the counsel of the defendant, that
such order was inequitable, and that all that the complain-
ant is entitled to, in any event, is the money due upon her
mortgage, with interest.

Under ordinary circumstances, perhaps, such a measure of
reparation would answer every purpose.   Such was the in-
timation in the opinion of Chancellor Walworth, in *Van Epps*
v. *Van Epps*, 9 *Paige* 237, which, in many of its aspects,
was strikingly similar to the present case.   But an attentive
observation of the peculiar attitude of the parties to this suit,
at the time of the sheriff's sale of the property in question,
will lead to the conclusion, that the mode of relief suggested
would be defective, and entirely inadequate to the emergency.
We are to assume that, in the view of equity, the defendant

neglected his duty of trustee, in not making the property produce at the sale, its fair value; it was his interest to do this, and he is, therefore, to be charged with that result. On this assumption, then, it becomes probable that the *cestui que trust* was injured by such neglect, beyond the loss of the mortgage which he held for her in trust. The two subsequent encumbrances were held in trust for her, and, consequently, if, by secret acts favoring his personal ends, the trustee had the property struck off at an insufficient price, these encumbrances, in whole or in part, may, by this means, have become worthless. Nor, in this connection, should it be overlooked that, although the respondent was not the complainant in the foreclosure suit, he had a decree in his favor, and that the execution directed the sheriff to levy certain moneys for him, and that, consequently, he had a control, to some extent, over the place, time, and circumstances of the sale. The defendant, therefore, was in a situation, in some degree at least, to affect the proceeding of sale; he voluntarily placed himself in a state of repugnancy as to interest, to the complainant whom he represented, and he has no right to complain, if he is not permitted to retain a bargain which, it seems probable, has not only defeated the trust security in his own hands, but has had a like disastrous effect upon the two mortgages which were subsequent. If we assume that the farm was really worth all these securities, then it becomes obvious that, if the law exacts but the payment of the one mortgage from the defendant, his misconduct, as a trustee, will be a source of considerable profit to him, and in an equal degree, a detriment to his *cestui que trust*. This result, it is conceived, is not consistent with the regulations before adverted to, established by law on grounds of public usefulness, to control the conduct of the trustee, and protect the rights of the *cestui que trust*. At this moment the defendant stands before the court, claiming the fruits of this bargain, which he has made in disregard and subversion of the interest of the complainant; if he had not infringed the rights of the complainant, he would not have acquired

these fruits; it seems difficult to perceive any ground of equity upon which he can be permitted to retain them. But, besides this, when we look into the essence of the transaction of the vendue in question, we will perceive that in substance the defendant was purchasing, when he bought in the lands in question, the property of his *cestui que trust.* The farm was clearly encumbered to its full value, and the complainant was the owner of nearly two-thirds in value, of such encumbrances. The legal interest of the mortgagor, therefore, was but nominal, and the substantial interest which the defendant purchased, was the equitable rights of his own *cestui que trust,* and of those rights he became possessed by his purchase. They were sold in part by force of the decree in his favor as trustee, and in such a condition of affairs, it would seem to be clear, he ought not to be allowed to make a profit out of the speculation.

There is also another ground of objection to this claim of the defendant. The purchase in question, was made by the use of the mortgage which was in equity owned by the complainant. That mortgage the defendant could not lawfully use in his own concerns, so as to make a profit to himself. If a trustee use trust funds in the purchase of property, or in the transactions of business, it is a violation of his duty as trustee, and the profits of such purchase or business must enure to the benefit of his *cestui que trust.* It is the general rule, indispensably necessary to keep trustees in the line of their province, that they shall derive no advantage whatever from the administration of the property committed to their charge. So strictly is this disability maintained, that where trustees bought in a debt or encumbrance, to which the trust estate was liable, for a less sum than was actually due thereon, they were not allowed to take the benefit to themselves, but the other claimants had the advantage of it, and it was said that if there were no such claimants, it would go to the party entitled to the surplus. *Robinson* v. *Pett,* 3 *P. W.* 251, *note A.* "If trust money," says Lewin, using the language of the authorities, "be laid out by a trustee in buying and selling

land, and a profit be made by the transaction, that shall go, not to the trustee who has so applied the money, but to the *cestui que trust*, whose money has been applied. So, where a trustee or executor, has used the fund committed to his care in stock speculations, though any loss must fall exclusively on himself, he must account to the trust estate for every farthing of the profit. If he lay out the trust money in a commercial adventure, as in buying or fitting out a vessel for a voyage, or put it in the trade of another person, from which he is to derive certain stipulated gains, or if he employ it himself, for the purposes of his own business, in all these cases he must account to the *cestui que trust* for the profits." *Lewin on Trusts* 289. A long series of uniform precedents sustain the universality of this rule; it never bends to circumstances, and is applied with inexorable severity, whenever a person occupying a relation which implies confidence, is entrusted with the safe keeping of the property of another. To make use of such property, except for the exclusive advantage of the party beneficially interested, is in itself a breach of trust, and it would be a violation of principle to suffer the trustee to take any gain from such misconduct. In the case now before the court, the trustee has made the mortgage which belongs to the complainant, an instrument whereby the farm, in which she had a large equitable interest, has become his property. All that the complainant asks is, that she may have the fruits of this bargain. We are of opinion that, under the peculiar circumstances of this case, such relief is proper.

Let the decree stand affirmed with costs.

The decree was affirmed by the following vote:

*For affirmance*—BEASLEY, C. J., BEDLE, DALRIMPLE, DEPUE, ELMER, FORT, KENNEDY, VAIL, VREDENBURGH, WALES, WOODHULL. 11.

*For reversal*—CLEMENT. 1.