Farmer's Executor *v.* Farmer.

THE EXECUTOR OF GEORGE FARMER, deceased,

*v.*

ELIZABETH H. FARMER et al.

1. The legislation of this state, enlarging the capacity of a married woman to acquire and dispose of property, does not give her capacity to make a legal contract with her husband.

2. A wife may bestow her property, by gift, on her husband, or she may make a contract with him which will be upheld in equity, but the courts always examine such transactions with an anxious watchfulness and dread of undue influence.

3. Where a contract is made by parties holding confidential relations, so that it is probable that they did not deal on terms of equality, but that unfair advantage might have been taken by the stronger party of the weaker, there the burden, if the contract is assailed, rests on the stronger party to show that no advantage was taken, otherwise fraud will be presumed.

On final hearing on bill and answer, and cross-bill and answer, and proofs taken in open court.

*Mr. Frank B. Colton* and *Mr. John W. Taylor*, for complainant.

*Mr. William B. Guild*, for defendants.

VAN FLEET, V. C.

This suit is brought by William H. Peck, one of the executors of the last will and testament of George Farmer, deceased, against

Elizabeth H. Farmer, his co-executor, and also against Eli H. Reynolds and James N. Duffy, who, together with the complainant's co-executor, were on the 10th of May, 1881, carrying on business, as copartners, under the name of Reynolds, Duffy & Co. The object of the suit is to procure a decree declaring whether a certain promissory note constitutes part of the estate of the testator, or is the individual property of Elizabeth H. Farmer.

The material facts may be summarized as follows: Elizabeth is the widow of the testator. She and the testator were married on the 18th of February, 1874. At the date of their marriage she was the owner of considerable property, and a member of a partnership engaged in the manufacture of leather. The principal part of her property consisted of the capital she had contributed to the partnership, and of the real estate used by the partnership. The latter she owned in severalty, and let to the firm at a rent of from $10,000 to $12,000 a year. In May, 1874, Mrs. Farmer gave the testator a power of attorney, authorizing him to manage and conduct her business, and to do, generally, all things pertaining thereto. Under this authority the testator conducted all his wife's transactions with the firm up to the time of his death, which occurred on the 27th of July, 1883. The firm paid him the rent of the lands they held under her, and also her share of the profits of the business. On the 10th of May, 1881, the firm made a note, payable on demand, after date, to the order of Mrs. Farmer, for $12,478, for her share of the profits of the business up to the preceding January. This note, endorsed by Mrs. Farmer, was found among the testator's papers after his death, and is the subject of the present controversy.

The bill alleges that the note was endorsed to the testator for a good and valuable consideration, and thereby became his property. Mere possession by an endorsee of a negotiable note, regularly endorsed by the payee, is, in ordinary cases, all that is required to make a complete case for the endorsee. Here, however, the parties were, in consequence of their matrimonial connection, incompetent to enter into a legal contract with each other.

Notwithstanding the capacity of a married woman to acquire, use and dispose of property has been very greatly enlarged, still the statute making the enlargement declares, "Nor shall anything herein enable husband or wife to contract with or to sue each other, except as heretofore." *Rev. p. 639 § 14.* The purpose of this provision has been defined. Chief-Justice Beasley, speaking for the supreme court, says its " object was to leave the husband and wife, touching their capacity to bargain together, on the ancient footing of the common law. The clause is virtually a legislative declaration that, as heretofore, they may enter, *inter sese*, into equitable agreements, but not into legal agreements. It was obviously intended that the court of equity should, as it had always done prior to the amplification of the rights of the wife, exercise a supervision over the engagements of married persons." *Woodruff* v. *Clark, 13 Vr. 198.* At common law, husband and wife were one person, so that neither could give the other any estate or interest. *Co. Litt. 188 a.*

But had the testator held the note by endorsement from a person competent to contract with him, still, I think, in view of the fact that he was the attorney of the endorser, managing and conducting all her business, and receiving and disbursing all her moneys, her endorsement would, under the circumstances, furnish no evidence whatever that the note was his property. The evidence shows that he took complete charge of all her business; he received all her moneys and made all her disbursements, and held in his hands, at all times, all her moneys, except such inconsiderable sums as she required from time to time for pocket-money. Except her pocket-money, her unexpended balances were, at all times, in his hands. He was her banker as well as her agent, so that it will be perceived, unless the proceeds of the note in question were to be dealt with in a manner very different from his other receipts for her, the note would, in regular course, be endorsed to him, not for his use, but for hers. Without her endorsement he could not use it, as he was accustomed to use other notes made by the firm for debts due to her. Her endorsement, therefore, under the circumstances, furnishes no evidence whatever that the note was his property.

But the complainant claims that the endorsement, considered in connection with other facts, shows either a gift of the note or a transfer of it, under such circumstances as to make it the property of the testator. The bill, as already stated, puts the complainant's right to the note on the single ground that it had been endorsed to the testator for value; no right by gift is claimed, but Mrs. Farmer makes a counter-claim by cross-bill, alleging that the note came to the hands of the testator as her agent, and remained her property at the time of his death, so that it will be seen that it is the duty of the court, under the issue thus raised, to decide which of the two adverse claimants is entitled to the note.

The evidence respecting the circumstances under which the endorsement was made is very unsatisfactory. We know that the note was given for a debt due to Mrs. Farmer, and that it was made payable to her by the special direction of the testator, and that such direction was a departure from the course almost uniformly pursued by him in making collections for her. In every other instance but one, his collections for her were made by check or note payable to himself, without in any way disclosing on their face his agency. We also know that the contract of transfer, that is, the words "Pay George Farmer or order," appearing on the back of the note, are in the testator's handwriting, and that the signature of Mrs. Farmer under them is in her own proper handwriting. Besides these facts, we have nothing whatever tending to show the circumstances under which the endorsement was made, except what may be found in the evidence offered to show admissions by Mrs. Farmer. A sister-in-law of the testator testifies that some time prior to the testator's death, Mrs. Farmer said she was in great trouble—her husband had asked her to sign a note for $12,000, and she had signed it and was very sorry for it. The complainant testifies that a few days before the testator's death, Mrs. Farmer told him that on the day she signed the note, the testator said to her he was going to speak to her about a matter that it was unpleasant for him to mention; he then said that he wanted her to give him this note for his services; that he got the pen and ink and

placed them with the note on a table before her, and asked her to sign the note, and she did so.   That she subsequently became troubled about what she had done, and told the testator so, when he replied that she need not bother herself about the note, as it was out of the way.   She also said that she did not think it was honest in the testator to ask her to sign the note.   On the day the testator's personal estate was inventoried and appraised, she refused to consent to an appraisement of the note as part of his estate, stating that he had no right to it, that she had signed it at his solicitation and was sorry for it.   She also said that she was surprised to find the note was in existence, as the testator had told her it was destroyed.   A niece of the testator, and the wife of the complainant, testifies that some weeks after the testator's death, Mrs. Farmer said to her that the testator had asked her to sign a note, and she had asked him what for, and that he had replied that it was a note for profits of the business, to which he thought he was entitled for his services, and that she had then signed it, but she did not think he was entitled to it.

These are the facts on which the title to the note must be decided.   The whole of the admissions of Mrs. Farmer must be considered—what she said in favor of her interest, as well as what she said against her interest.   Such evidence is received in courts of justice on the ground of the probability of the truth of an admission against interest, but, in order to determine the meaning of an admission, and to give it no greater effect than it is fairly entitled to, the whole of what the person said who made the admission must be considered. *Fox* v. *Lambson, 3 Hal. 275 ; 1 Greenl. Ev.* § *201.*

A wife may bestow her property by gift on her husband, or she may make a contract with him which will be upheld in equity, but such transactions are always examined by courts of equity with an anxious watchfulness and caution, and dread of undue influence; and if they are required to give sanction or effect to them, they will examine the wife in court, and adopt other precautions to ascertain her unbiased will and wishes.  *2 Story's Eq. Jur.* § *1395 ; Clancy M. W. 347 ; 1 Bishop M. W.* § *719 ; Grigbley* v. *Cox, 1 Ves., Sr., 517.*

Gifts by a wife to her husband, says Chancellor Kent, are to be closely inspected on account of the danger of improper influence, but if they appear to have been fairly made, and to be free from coercion and undue influence, they ought to be sustained. *Bradish* v. *Gibbs, 3 Johns. Ch. 523.* The reason of the rule is manifest. The confidence of the marriage relation is so complete, and the trust of the wife in the honor, good faith and love of her husband is generally so perfect, that in all business affairs she depends upon him, and suffers herself to be controlled by his judgment. Unless, therefore, the court, in the language of Lord Eldon, watches transactions between parties thus situated, where fraud may be committed with such facility and its discovery may be so easily baffled, with a jealousy almost invincible, it will oftener lend its assistance to fraud than punish the fraud-doer. *Hatch* v. *Hatch, 9 Ves. 292.*

But the testator stood in another relation of confidence to his wife. He was her agent, having general and complete control of all her business affairs. As her agent, he was bound, in all his dealings with her, to practice towards her the utmost good faith. A contract made by an agent with his principal, in relation to the subject-matter of the agency, will not be allowed to stand, unless it appears that it is entirely free from undue influence, advantage and imposition. The transaction must be characterized by the utmost good faith. There must be no misrepresentation, and an entire absence of concealment or suppression of any fact within the knowledge of the agent which might influence the principal; and the burden of establishing the perfect fairness of the contract is upon the agent. *Condit* v. *Blackwell, 7 C. E. Gr. 481; Porter* v. *Woodruff, 9 Stew. Eq. 174.* The same principle has been declared in many other cases. *Tate* v. *Williamson, L. R. (1 Eq.) 528; S. C. on Appeal, L. R. (2 Ch. App.) 55; Rhodes* v. *Bate, L. R. (1 Ch. App.) 252; Billage* v. *Southee, 9 Hare 534.* Perhaps the most accurate and comprehensive statement of it is that given by Judge Hand, in *Cowee* v. *Cornell, 75 N. Y. 91.* He said: "It may be stated as universally true that fraud vitiates all contracts, but as a general thing it is not to be presumed, but must be proved. Whenever, however,

the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side, from superior knowledge of the matter derived from a *fiduciary* relation, or from overmastering influence, or, on the other, from weakness, dependence or trust justifiably reposed, unfair advantage in a transaction is rendered probable, then the burden is shifted, the transaction is presumed void, and it is incumbent on the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood."

Now, two facts, if the whole evidence is credited, are entirely clear. First, that Mrs. Farmer did not pass the note to the testator as the free and uncontrolled expression of her will, but solely because he wanted her to do so, and against her will, because, as soon as she thought she comprehended what she had done, she regretted her act, and wanted to undo it. And second, that Mrs. Farmer did not fully understand what she was doing when she endorsed the note. She evidently thought she had signed a note as maker. This would seem to be very clear, from the fact that when the testator told her she need not bother herself about the note, it was out of the way, she was satisfied, because she thought it was destroyed; yet, if she had clearly understood what she had done, she would have been more troubled by the thought of the destruction of the note than that her husband had obtained it from her unfairly.

The proofs, in my judgment, entirely fail to show that the note was endorsed to the testator, for the purpose of investing him with title to it for his own use, and Mrs. Farmer is, consequently, entitled to a decree declaring the note to be her property.