CATHARINE COFFEY et al., appellants,

*v.*

JOHN H. SULLIVAN et ux., respondents.

[Filed June 17th, 1901.]

1. A father, seventy-eight years old, conveyed to one of his sons all his real estate (which was substantially all his property) by a deed of conveyance of bargain and sale operating under the statute of uses, for the expressed consideration of $1, and without power of revocation inserted in it; under the unequal position as well as the other relations of the parties, together with the circumstances shown by the complainants and narrated at length in the following opinion, it was *held* that the complainants had sustained the burden of proof assumed by them; that the inference of fraud in the procurement of the deed by the son from the father was legitimate and warranted, and that the deed should be declared void.—

Coffey *v.* Sullivan.

*Held, also,* that the conveyance could not, under the evidence, be sustained as a mortgage to secure debts, nor could it be supported upon the theory of a resulting or implied trust for the future care or support of the grantors, nor as a voluntary settlement from donor to donee.

2. Upon a sale of property, gross inadequacy of pecuniary consideration, joined with inequality in the position of the contracting parties, is a ground of equitable relief, and fraud will be presumed by the court if the circumstances and relations of the parties "either lend themselves to such presumption, or are without probative force sufficient to neutralize it."

3. A trust cannot be implied in favor of the grantor of land by deed operating under the statute of uses, the *habendum* clause declaring the use to be for the grantee.

4. An express trust, not manifested in writing, made by a grantee of a deed of conveyance of lands, in favor of the grantors, is void under the statute of frauds.

5. If, under the evidence, the conveyance must be regarded as a voluntary settlement from donor to donee, the burden of proof was cast upon the donee to clearly establish that the donor fully appreciated what he was doing, or at the least, in the doing had the benefit of independent and competent advice.

On appeal from a decree advised by Vice-Chancellor Stevens, who delivered the following opinion:

The evidence in this case on both sides is very meagre. The complainants, by their bill, attack a deed made by their father, James Sullivan, to his son John, on the ground that John procured it by fraud and undue influence. There is no affirmative evidence of either fraud or undue influence. The grantor, it is true, was about seventy-eight years old when he executed the deed, but the evidence, so far as it goes, shows that at that time he was an active old man, engaged in farming and capable of transacting business, whose mind did not become impaired until within a few months of his death. He died three years after the deed was made. Complainants do not show that John stood in any confidential relation to his father—that he acted as his agent or adviser—consequently the burden of proof is upon complainants to establish the fraud or undue influence they allege, not upon the defendant to show affirmatively that the deed was fairly obtained. Several of the cases cited do not apply for this reason. The case in hand appears to me to stand upon substantially the same footing as *Le Gendre* v. *Goodridge,*

Coffey *v.* Sullivan.

*1 Dick. Ch. Rep. 420,* and I will therefore advise a dismissal of the bill.

*Mr. Alan H. Strong,* for the appellants.

*Messrs. Vail & Ward,* for the respondents.

The opinion of the court was delivered by

VREDENBURGH, J.

This bill is filed by three of the four children of James Sullivan and Julia, his wife, to set aside a deed of conveyance of land, claimed to have been fraudulently obtained from their father by their other brother, John H. Sullivan. The deed is dated and was formally executed February 6th, 1896, by the father (who was seized of the fee of the lands), joined with the mother, who had an inchoate estate of dower therein. The father died intestate on January 6th, 1899, aged about eighty-one years, and must have been, at the date of this conveyance, about seventy-eight years old; and the mother, who is still living and was then about eighty-two or eighty-three years of age, was, according to the uncontradicted evidence, feeble-minded or demented to such a degree as to have been incapable of intelligently transacting business. The mental capacity of the father, about the time of the execution of the deed, is in dispute under the evidence; two witnesses testified that, in their opinion, his mind was very feeble, and two witnesses swore, on the contrary, that, in their opinion, the condition of his mind was good. No witness has testified as to the father's mental condition referring to the precise occasion of either the signing or the acknowledgment of, or the delivery of, the deed. The deed is of the ordinary "bargain and sale" form under the statute of uses, without covenants of warranty, and conveys to John the title in fee-simple absolute to four lots of land situate in Rahway, New Jersey (the value does not appear), one of which embraces the homestead property, which had been the grantors' home for many years. It is established by the evidence, and is conceded in the case, that this deed conveyed away all of the lands owned by the father,

and that his personalty was of trifling amount. No administration of it appears to have been taken out. The deed contains no power of revocation reserved by the grantors, nor any covenant or agreement by the grantee for the future care or support of the grantors in consideration for the grant. John did not, at any time, either before or after the transfer, consult with or inform his brothers or sisters concerning it, and, in fact, when asked about it by his sister on an occasion some time after the delivery of the deed to him, evasively denied that he had the property. The consideration recital of the deed is in the usual form, and recites that the grantors, "in consideration of the sum of one dollar to them in hand paid, * * * have granted, bargained, sold * * * and conveyed" to the grantee "and his heirs and assigns forever," the four tracts of land above referred to (describing them by their metes and bounds). There is no legal evidence in the case, other than this recital, that the grantors, or either of them, ever received any consideration money for this deed. The defendant (the only other party to the bargain and sale evidenced by this deed now alive and mentally capable of giving competent evidence as to any consideration agreed upon between them) has not been sworn as a witness. The bill prays answer without oath, and the statements of the defendant's unverified answer, in respect to any consideration, whether responsive or not to the bill, cannot, under the statute and our settled practice, be either regarded or received as evidence against the complainants. So far forth as this deed of "bargain and sale" rests upon a money consideration received, it must, under the evidence, be found and presumed that only the nominal sum of $1 was received for it by the grantors—a sum so grossly inadequate as, of itself, when viewed in the light of the circumstances and relations of the parties, to be a convincing proof of fraud or imposition. The rule adopted by Chancellor Vroom in the case of *Executors of Wintermute* v. *Executors of Snyder, 2 Gr. Ch. 490,* was that "if the inadequacy be such as to shock the conscience, it will amount to evidence of fraud and will be so considered," citing cases. *2 Pom. Eq. Jur.* ¶ *927* states the principle as follows:

"Although the actual cases in which a contract or conveyance has been canceled on account of gross inadequacy merely, without other inequitable incidents, are very few, yet the doctrine is settled by a concensus of decisions and *dicta* that, even in the absence of all other circumstances, when the inadequacy of price is so gross that it shocks the conscience and furnishes satisfactory and decisive evidence of fraud, it will be a sufficient ground for canceling a conveyance or contract whether executed or executory; even then fraud, and not inadequacy of price, is the true and only cause for the interposition of equity and the granting of relief."

In the case of *Gifford's Administrator* v. *Thorn, 1 Stock. 702,* the principle was stated by Chief-Justice Green (sitting for the chancellor), with a modification, as follows: That "upon a sale of property gross inadequacy of price, joined with inequality in the position of the contracting parties, is a ground of equitable relief." See, also, *Lundy* v. *Seymour, 10 Dick. Ch. Rep. 7; Weber* v. *Weitling, 3 C. E. Gr. 441.* And in *Phillips* v. *Pullen, 18 Stew. Eq. 836,* the opinion of this court, delivered by Mr. Justice Garrison, recognizing that fraud in such cases is the true ground for the interference of equity, lays down the rule in this wise: "Fraud will be presumed from inadequacy of consideration, standing alone, if the inadequacy be so gross as to satisfy the court that it could have been brought about only by deceit or imposition, provided the circumstances and relations of the parties either lend themselves to such a presumption, or are without probative force sufficient to neutralize it." Testing the present transaction either by the rule as stated by Chancellor Vroom and Pomeroy, that fraud would be presumed from gross inadequacy of price alone, or by the later modifications announced in *Gifford* v. *Thorn, supra,* and by this court in the case of *Phillips* v. *Pullen,* just referred to, to the effect that the position, circumstances and relations of the parties are to be considered before the making of such presumption, this deed, so far as its validity depends upon the feature of bargain and sale, cannot be sustained. The parties to it did not occupy a position of equality. John lived within three or four blocks from his father, and had continual access to him; the other children lived at a distance, and only saw their parents occasionally. The father was, in some degree at least, under the weight of the evidence,

enfeebled both mentally and physically, and the mother, who joined him in the conveyance, instead of being capable of assistance by her advice, must rather have been an obstacle to a correct appreciation by the father of the gravity of the act. The grantors had not the benefit of independent advice in the making of this important transfer. The lawyer who seems to have been consulted about the matter as the "medium of the transfer of the property" was the selection of the grantee alone. No family consultation or arrangement appears ever to have been had or held upon this subject. That the defendant exercised great influence upon the father cannot be doubted. The delivery of this deed to John, divesting, as it did, the father of all his property, without power of revocation reserved by him, and without the slightest legal assurance or security for his future support, is, in and of itself, strong evidence of such influence. The father, when in the son's presence, did not assert his right to confidences with others. It appears, by the undisputed evidence of two witnesses, that in the year of 1895, and also in 1896, at about the time of this transfer, John, by his almost constant presence and repeated entrances into the room where his father (who was sick) was confined, designedly prevented private conversation with the father, and on several occasions, in the early part of the year of 1896, when one of the complainants was engaged in private conversation with the father, John's coming into the room caused the father to "drop the subject" of conversation. Instead of affording his father the fullest opportunity to consult with his other children, and with others, upon private subjects, John, by his conduct, actively discouraged the father's confidences, both with them and others. Not only so, but when his sister, who had heard that he had "got the place," naturally asked him concerning it, he denied the fact, and answered her in such equivocal language as tended to put her off her guard upon that subject. Without adverting more at length to the evidence upon this head, it must be considered that the circumstances above related and the relations of this favored son to the father were such as to "lend themselves" decidedly to the presumption of fraud, and this instrument cannot stand the applied test. Can the conveyance be supported as a mortgage

to secure debts? In his answer, without oath, to the bill of complaint John charges the truth to be that he

"had for many years loaned and advanced money [no amount is specified] for the purpose of paying taxes, assessments and other charges against the said property, and for the purpose of supporting in comfort"

his father and mother, and that, on February 5th, 1896, his father

"freely and voluntarily conveyed said property to this defendant in full satisfaction of the money which this defendant had theretofore loaned to the said James Sullivan, and as a recognition of the care and assistance which these defendants had *theretofore* given to the said James Sullivan and his wife."

But no evidence can be found in the case showing, or even tending to show, that this charge is true, and it must therefore be held to have no foundation in fact. If we are to regard this deed as a voluntary settlement from donor to donee, and such, there is some reason for believing from the evidence to have been its real character, it cannot be doubted, under the uniform authorities, both English and American, that, at the close of complainants' evidence, the burden of proof was cast upon the donee to establish that the donor fully appreciated what he was doing, or at all events, in the doing had the benefit of disinterested and competent advice. *Hall* v. *Otterson, 7 Dick. Ch. Rep. 528,* and cases cited. The facts in *White* v. *White, 15 Dick. Ch. Rep. 104,* and the authorities there cited by Vice-Chancellor Pitney, are so apposite in almost all respects to the case in hand that especial attention is here called to them. See, also, *Pironi* v. *Corrigan, 2 Dick. Ch. Rep. 135, 156,* and the English cases of *Parfitt* v. *Lawless, L. R. 2 P. & D. 468; Rhodes* v. *Bate, L. R. 1 Ch. App. 257.*

Can the deed be sustained upon the theory of a resulting or implied trust in favor of the parents for their future support? One of the difficulties we meet here is that the defendant, by his statements to his sister (which he has not attempted either to deny or explain), has negatived the existence of any implied trust; on the contrary, he asserted that the property was given

him, under what is equivalent to an express parol trust, "to take care of his parents." In August or September of the year 1898, on a very impressive occasion, when the Reverend Bernard Brogan, the priest of whose parish John was a member, together with the father and sister, were present, in answer to questions asked him as to his obtaining this property from his father, John answered that

"what he had got, he got to take care of his parents; that what was given him he got to take care of his parents, and he was going to take care of them."

In making this declaration it will be observed that he expressly antagonized the statements of his answer to the effect that the deed was given for money loaned and as a recognition of the care and assistance which he had "theretofore" given to his parents. But, aside from this evident contradiction, and the doubt thereby suggested of any previous payment of consideration, it must be apparent that if there had been any agreement between the parties, such as may be inferred from this conversation of John, it discloses an express parol trust entered into by him for the future care of his parents. If such an express trust had been manifested either in the deed when accepted by John, under his signature, or by any other writing, signed by him so as to satisfy the requirements of the statute of frauds, the case would have presented a different aspect. But such a trust cannot arise in this case in favor of the grantors as a resulting trust; their deed, upon its very face, was made for a consideration, though nominal, and the *habendum* clause declares the use to be for the grantee. In such a conveyance no use results to the grantor. The authorities upon this branch of equity jurisprudence hold that "where a deed expresses a consideration which is merely nominal, no use results to the grantor, and parol proof that the conveyance was intended to be in trust for the grantor is not admissible and will not raise a trust." Nor can a trust be implied in favor of the grantor of land, "by deed operating under the statute of uses, in favor of the grantee; where a use is declared, no other use can be shown to result." *1 Perry Trusts* ¶ *162; Whyte* v. *Arthur, 2 C. E. Gr. 523; Hogan* v. *Jaques, 4*

*C. E. Gr. 123; Lovett* v. *Taylor, 9 Dick. Ch. Rep. 311,* and other cases cited at top of *p. 319; Browne Fraud* ¶ *111; Leman* v. *Whitley, 4 Russ. 423.*

These declarations of John, if they are to be relied upon as stating the fact, go to establish an express trust, which it must be held was void because not reduced to writing and not signed by him, and was therefore unenforceable. In the court below it was considered that there was no affirmative evidence that this deed was procured by either fraud or undue influence, and the case was compared with that of *Le Gendre* v. *Goodridge, 1 Dick. Ch. Rep. 420,* and upon the strength of the comparison the opinion advised the dismissal of the bill. But it will be found by an examination of the instructive opinion filed in that case that the result there reached was based, not only upon proofs showing "perfect capacity" in the grantor to make the deed, but also, in a very marked degree, upon the testimony of the grantee, who met the burden of proof by swearing, *inter alia,* that "the first she knew that her mother contemplated making the deed was when she announced that she would make it," and that "she did nothing designedly to put a desire in her mother's heart or mind to make" the deed. Vice-Chancellor Van Fleet was thus evidently convinced by the testimony of the grantee that the purpose to make the deed was, to use his forcible language, the "spontaneous product of the grantor's mind," and that it "originated entirely with her, without solicitation, hint or suggestion of any kind from the grantee." We have no such assurances from the accused grantee in the case in hand. On the contrary, he has advisedly elected to remain silent as a witness, and to challenge only the legal sufficiency of complainants' evidence to sustain the burden of proof as to the charges of fraud and imposition against him upon which their right to relief depends. But in view of the circumstances and relations of the parties above narrated; in view of the complainants' proofs showing the designed concealment and misrepresentation by the defendant of the fact of the conveyance to him when information was asked of him by his sister, and when it was his duty to disclose the truth to her; in view, also, of his interference on several occasions with free conversation between his father and sister,

Coffey *v.* Sullivan.

and also between his father and Mary Dawson, the burden of proof was, I think, thrown upon him to rebut and overcome, by evidence, the presumption of fraud, which these facts, in connection with the recital in his deed of his payment of only a nominal consideration for the property, raised up against him. In this he has utterly failed. Matters of grave moment seem to me to enter into the questions presented for our decision upon this appeal. They involve the extent of the protection and relief which courts of equity will deem it their duty and within their equitable powers to afford, in their anxiety to restrain improvidence—to prevent the success of fraud and imposition attempted to be practiced upon the aged and feeble-minded—to secure to those having equal claims upon parental generosity the equality of the division of property against the schemes of grasping avarice, thus to preserve the ultimate peace and happiness of the family circle from lifelong animosity, certain to be aroused by any attempt to obtain from old and trusting parents any unfair advantage in the disposition of their property. These, and other considerations relating to the policy of our laws for the exemption of the public from charges for the support of the poor and the improvident, all unite to condemn the transaction which forms the subject of this suit. The decree below should be reversed, and a decree entered in favor of the complainants declaring the deed void, in accordance with the prayer of the bill.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, BOGERT, VREDENBURGH, VOORHEES, VROOM—10.

*For affirmance*—GARRETSON, HENDRICKSON, ADAMS—3.