SAMUEL A. CLARK et al.

*v.*

MARIA S. CLARK, individually and as executrix, &c., et al.

[Submitted April 24th, 1917. Decided May 11th, 1917.]

Commissions are denied to an agent who kept no accurate records of his agency business, permitted trust funds to remain idle, mingled the trust funds with his own, and on an accounting was found unable to account for a large balance due from him, and in such a case the full legal rate of interest will be charged from the date of each conversion, and compounded as a punishment.

On bill, &c.

*Mr. Sidney W. Eldridge,* for the complainants.

*Mr. Foster M. Voorhees,* for the defendants.

BACKES, V. C.

This bill is for an account and was referred to a master, whose report has been excepted to in the particulars hereafter mentioned.

Amos Clark died October 30th, 1912, at the age of eighty-two, in Boston, where, in the latter years of his life, he made his home. He had large real estate holdings in Elizabeth and Union county, and some in Tarrytown, New York. His son, William A. Clark, had the sole and exclusive management and control of his property, attending to the collection of rents, and negotiating sales of the realty, and handled his financial affairs generally. William A. Clark died a year after his father, and this bill was filed against his executors by his father's executors, for an accounting. The master was directed to take an accounting for the period of six years next preceding the death of Amos Clark, and he has reported that during this time

William A. Clark received $229,503.63 and disbursed $173,-261.54, leaving unaccounted for and due to the complainants $56,242.09, besides interest. A stipulation was entered into by counsel attesting the correctness of these charges and discharges, reserving the items to which the present exceptions are directed, and some others which the master has allowed and to which no exceptions have been taken.

The first and second exceptions are to two items of charges of $1,000 respectively. These sums were part consideration price of the sales of two tracts of land: one to William C. Haugaard, the other to the Murray Hill Heights Company. The single ground of objection is that the moneys were not traced into the hands of the agent and therefore the proofs fall short of the legal requirement. No such duty is imposed upon the complainants. The transfers and amounts are admitted, and as the son negotiated the sales exclusively, which is also conceded, the inference is inevitable that he collected the proceeds. Moreover, the evidence satisfactorily establishes the charges and sustains the master's findings.

The third exception relates to a charge of $4,556.21 the proceeds of a bond and mortgage made to Amos Clark by Dorothy Miller. That William A. Clark cashed this mortgage is not disputed. The contention is that it was his property by gift from his father. The mortgage was assigned by Amos Clark to William A. Clark on March 28th, 1910, and by the latter hypothecated with the Plainfield Trust Company for a personal loan of $3,500, three days later, and afterwards assigned to the Fidelity Trust Company. One thousand dollars was paid on account of the loan out of trust funds, and the balance liquidated by the assignee; the surplus being deposited by William A. Clark in his trust account. Letters by Amos Clark to his son, and found in the latter's possession, written at the time the mortgage was assigned, concerning the purpose of the assignment, and others of much later dates, inquiring as to the interest and the disposition, if any, made of the mortgage, and the application by William A. Clark of part of the proceeds to the credit of the trust estate, evinces beyond peradventure that the assignment from the father to the son was made for con-

venience of sale or collection, or was procured by the latter to serve the ulterior purpose to which it was put. For the purpose of illuminating the transaction, the letters, although unanswered, were competent. *State* v. *MacFarland, 83 N. J. L. 474.*

There is another reason for sustaining the charge. There is no proof to establish the alleged gift. The written assignment alone—and this is all the defendants rely upon—is not sufficient. The rule is that "In all transactions between persons occupying relations, whether legal, natural or conventional in their origin, in which confidence is naturally inspired, is presumed, or in fact reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed and who has acquired an advantage, to show affirmatively, not only that no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood." *Hall* v. *Otterson,* 52 *N. J. Eq.* 522; *Parker* v. *Parker,* 45 *N. J. Eq.* 224; *Corrigan* v. *Pironi,* 48 *N. J. Eq.* 607; *Coffey* v. *Sullivan,* 63 *N. J. Eq.* 296.

The fourth exception is to a charge of $17,500, the proceeds of the sale to Thomas A. Sperry of a tract of land of thirty-six and fifty-four hundredths acres, and of "the grist mill lot and the lot of forty-five hundredths acres" adjacent. The tract of thirty-six and fifty-four hundredths acres was conveyed by Amos Clark to his son on May 29th, 1907, for a consideration of one dollar. The title to the grist mill lot and the one adjoining was also at one time in Amos Clark. The history of these lands is fully set forth in the evidence and the master's report, and it is only necessary to remark that it satisfactorily appears that they at all times belonged to Amos Clark, and that in his dealings with them William A. Clark recognized and acknowledged the beneficial ownership of his father.

The grist mill lot and the forty-five hundredths acre lot formed an inconsequential part of the sale to Sperry, and was not adverted to in the argument, except to reflect William A. Clark's ownership of the larger tract conveyed to him by his father. It is not pretended that any consideration was paid for this latter conveyance, but the contention is that as the deed is absolute

on its face and declares the uses to be for the grantee, proof of a resulting trust is inadmissible and, therefore, and because there was none of an express trust within the statute of frauds, the defendants cannot be called upon to account. This would ordinarily be so. *Fretz* v. *Roth, 68 N. J. Eq. 516.* But, where a fiduciary relation of trust and confidence exists, the rules of evidence which exclude oral testimony to vary a written document, are superseded by the equitable rule above quoted from the *Otterson Case,* to the effect that a conveyance of land will not be upheld as a gift unless it is shown affirmatively that it was so intended and understood. There is no such evidence.

Fifth exception: The master allowed $15,000 commissions for services, at the rate of $2,500 a year, to which both complainants and defendants except, the former contending that none should have been allowed, or at the most $2,000 per annum, while the defendants claim that the services were reasonably worth $5,000 a year.

There is no evidence of an express contract to remunerate. The declaration of William A. Clark that his father was paying him $2,000 a year, is not competent to prove an agreement, although it might be considered in limiting the amount of compensation.

The character of the services and the circumstances under which they were rendered, were such as to imply a promise to pay for them. Although they were performed by the son for the father, they were not rendered as members of the same household in the usual family relationship, and no countervailing presumption arises that they were discharged gratuitously. *Disbrow* v. *Durand, 54 N. J. Law 343.*

Compensation, however, is allowed only when the servant has faithfully performed his duty. Here, the son was guilty of most flagrant abuses of his trust. He kept no accounts; mingled the funds with his own; from time to time appropriated them to his own use and finished with a defalcation of over $71,000. This deficiency covers a period of six years only, and how much more of the estate was absorbed before and from the time the trust began, can only be conjectured. I am unable to comprehend upon what theory, with principle and authority against

it, the master arrived at his conclusion. It was suggested that Amos Clark was habitually careless in the matter of accounts, and especially so with reference to his son's, and that this ruling passion influenced the latter and was in a large measure responsible for his failure to keep a faithful record of his stewardship. Indeed, I observe that the master indulges in some palliative sentiments along this line, but I fail to discover any heritable quality in the parental trait. The chaotic and deplorable condition in which the accounts were found, and which required the services of two experts to extricate and bring to an intelligent understanding, was undoubtedly due to an indifference to duty, but the toleration of the father was not a license to plunder. The relation was most intimately confidential, intensified by a father's high esteem and great natural love and affection, and thus, aged and helpless, he entrusted all of his material interests to his son, relying implicitly upon his fidelity, in unbounded assurance that all was well husbanded and conserved. And this confidence was repaid by despoiling the estate of nearly one-third of its assets, at the rate approximately of $1,000 a month, and during a period when the father's allowance for the support of his family, consisting of himself, wife and niece, was reduced to $200 a month, presumably by arrangement, in the belief that that was all that the estate could afford, and when the son knew that his father was frequently distressed for want of money. Compensation, under such circumstances, would reward faithlessness and duplicity and is unthinkable. For offences, venial in comparison, commissions have been uniformly denied, as for failure to keep accurate records or to render an account; permitting trust funds to lie idle or remain unsecured, or without distinct and separate investment; for mingling them with one's own funds, &c. The cases are collected in *In re Walsh's Estate, 80 N. J. Eq. 565.* The rule has also been applied where the compensation was fixed by agreement. *Ridgeway* v. *Ludlam, 7 N. J. Eq. 123;* see, also, *Wright* v. *Smith, 23 N. J. Eq. 106.*

Sixth exception: The master reported that the interest upon the amount of the defalcation be computed at the rate of four per cent. from the death of Amos Clark. There is no room

for compassion in this case. The master should have calculated interest at the legal rate. Exact justice demands that interest be reckoned from the date of each conversion, and compounded as a punishment. *Frey* v. *Frey, 17 N. J. Eq. 71.* As the exception challenges only the rate, the report will be modified to that extent.

The defendants' exceptions will be overruled, and the complainants' exceptions sustained, with costs. The master's report will be confirmed, except as to the compensation and interest, and as to these it will be corrected, and a decree advised accordingly.