The complainant is the administratrix and next of kin of Anna Christian, who died on November 2, 1926, at the age of sixty-seven. For at least twenty-five years previous to her death she had been a confirmed invalid; for more than ten years practically confined to her room; and for at least eighteen months immediately prior to her death, to her bed. She suffered from a variety of ailments, not the least of which was cancer of the rectum, but she died of chronic bronchitis. The defendant is what is known as a Christian Science healer, and for several years prior to Miss Christian's death gave her Christian Science treatments, both absent and present, to the almost complete exclusion of medical treatment and advice, except during the last two months of Miss Christian's illness, when a doctor of medicine was called in, as he expressed it, "to write the death certificate." She was then beyond medical help.
This bill is filed to set aside two instruments, dated respectively October 7th, 1926, and October 14th, 1926, executed by the decedent and purporting to transfer to the defendant Mrs. Canfield four certain securities having a value at that time of $13,730, three of which were later sold by the defendant for $13,003.50, and constituting more than two-thirds in value of the entire estate of the transferor, and from which she derived approximately two-thirds of her income, on the ground that the transfer was improvident and procured by fraud and undue influence in violation of a confidential relationship existing between transferor and transferee, and without the benefit of independent advice to the transferor. Of the four stocks in the possession of the defendant and purporting to have been transferred by the instrument *Page 549 
of October 7th, fifteen shares of United States Tobacco Company, Preferred, were returned by Mrs. Canfield on October 25th, and sold, apparently to supply much needed funds for Miss Christian's support and maintenance during her last illness, but no explanation of this circumstance is offered. No detailed discussion of the evidence in this cause will be attempted. It justifies a finding of both a confidential and a fiduciary relation between Mrs. Canfield and the decedent. The relation of physician (healer) and patient was a confidential one; and the fact that since the death of the decedent's brother in May, 1924, Mrs. Canfield had entire charge and supervision of the decedent's financial affairs, did all of her banking business for her, had exclusive access to her safe deposit box, and, in general, assumed complete control of her affairs, created the fiduciary relation.
The first of the instruments here involved purports to evidence a simple gift of the securities; the second, a transfer upon the expressed consideration of $1; and a third, a letter signed by the defendant and addressed to a Miss Schroeder, with whom the decedent had lived for the last fifteen years of her life, and delivered to Miss Schroeder after Miss Christian's death, purports to evidence the real consideration of the transfer and is in the nature of a promise to pay to Miss Schroeder the sum of $3,000 at some future time. It is not shown that the decedent had any knowledge whatever of this instrument and it remained in Mrs. Canfield's possession until delivered to Miss Schroeder. All of the securities here involved had come into Mrs. Canfield's possession a long time previous to October 7th, 1926, and had been deposited by her as collateral security in her marginal trading account with a firm of stock brokers. By this transfer the decedent was left with property of a face value of $6,421.81, about half of which was of doubtful value, and which produced an income of only $439 per annum, while her fixed expenses for board and lodging alone amounted to $780 per annum. It is obvious that the transfer of this portion of her estate was improvident and it is not even *Page 550 
contended that she had any independent advice. The fact that Miss Christian was rapidly approaching her demise does not render the transfer any the less improvident. No one could with certainty fix the time of her impending death, and it is not shown that she realized its nearness, although it is quite apparent that Mrs. Canfield did, notwithstanding which she asserts in her answer that she believed the decedent "would live for a considerable period of years thereafter." If she did so believe, the improvidence of the transaction is all the more apparent.
The law applicable to the situation here disclosed is well settled and in fact is not in dispute. At the outset we start with the presumption against the bona fides of the transaction because of the confidential and fiduciary relationship and the burden of showing the contrary is upon the beneficiary. That includes the burden of showing not only that the transfer was not procured by fraud or undue influence, but that the nature of the transaction was fully understood by Miss Christian, and that she had independent advice. Haydock v. Haydock's Exrs. (Court ofErrors and Appeals), 34 N.J. Eq. 570, 574; Farmer's Executor
v. Farmer (V.C. Van Fleet), 39 N.J. Eq. 211; Mott v. Mott
(V.C. Green), 49 N.J. Eq. 192, 198; Hall v. Otterson,52 N.J. Eq. 522, 528; affirmed per curiam, 53 N.J. Eq. 695; Coffey
v. Sullivan (Court of Errors and Appeals), 63 N.J. Eq. 296;Thorp v. Smith (Court of Errors and Appeals), 65 N.J. Eq. 400; affirming 63 N.J. Eq. 70; Slack v. Rees (Court of Errorsand Appeals), 66 N.J. Eq. 447; Albert v. Haeberly (Court ofErrors and Appeals), 68 N.J. Eq. 664; Post v. Hagan (Courtof Errors and Appeals), 71 N.J. Eq. 234; Bauer v. Cron
(Court of Errors and Appeals), 71 N.J. Eq. 743, 748; Pearce
v. Stines (V.C. Stevens), 79 N.J. Eq. 51, 55; Hunt v.Naylor (V.C. Backes), 84 N.J. Eq. 646, 651; Smith v.Schopper (V.C. Griffin), 86 N.J. Eq. 107, 117; Vass v.Warner (Court of Errors and Appeals), 92 N.J. Eq. 294;Siebold v. Zieboldt (V.C. Griffin), 93 N.J. Eq. 327;affirmed per curiam, 93 N.J. Eq. 500; McCully *Page 551 
v. Rowland (V.C. Lewis), 94 N.J. Eq. 57; In re Fulper
(V.C. Buchanan), 99 N.J. Eq. 293, 309.
No appreciable attempt to sustain this burden has been made nor has any evidence whatever been offered to sustain Mrs. Canfield's defense, set up in her answer, that the decedent had suffered losses in speculation through the defendant's marginal account with the brokers.
Although it is claimed by the defendant that the decedent was strong willed, and had a mind of her own and could not be influenced, and although it may be conceded that one suffering as Miss Christian did through long years of illness might still retain a clear mentality until the last, and might competently dispose of her estate by gift inter vivos or by will, I think it is clear that the decedent's condition was such as to make her peculiarly susceptible to influence, particularly at the time of the execution of the instruments here involved and by one who stood in the position occupied by Mrs. Canfield. The only reliable medical testimony respecting the decedent's mental condition is that given by Dr. Ballantine, who says that Miss Christian's powers of resistance were necessarily below par and that at the very time these instruments were executed she was to some extent under the influence of opiates. In my judgment, the execution of these instruments by the decedent was the result of the dominating influence of a strong mind with a settled purpose over a mind necessarily weakened and unresisting as a result of disease and prolonged suffering. Defendant claims that the transfer was upon a valid and valuable consideration and that, therefore, the rules laid down in the cases above cited do not apply. That they do apply, see Coffey v. Sullivan, supra;Soper v. Cisco, 85 N.J. Eq. 165 (at p. 170), and In reFulper, supra (at p. 303). But the evidence does not support the claim of consideration. The promise to pay Miss Schroeder was not performed and the administratrix paid her claim.
Although advanced as an argument on behalf of the defendant, we are not here concerned with the decedent's treatment *Page 552 
by her relatives prior to her death. If that treatment did not merit the reward which will be theirs if this estate is distributed among them, the answer is that they are not here asserting their moral, but their legal, rights. It may be that the defendant is more deserving of financial reward in recognition of her service as friend and healer, but it must not be overlooked that she was a professional "healer" and was paid for her services at regular stated intervals during the entire period of her treatment which continued for over five years. The law recognizes no claim against the estate upon moral grounds, nor does it refuse to recognize a legal claim because, perchance, the legal claimant did not discharge his entire moral obligation. It is to be assumed that if the decedent desired to subtract from her relatives' legal rights she would have availed herself of her privilege to dispose of her estate by will.
I will advise a decree setting aside the instruments of October 7th and October 14th, executed by the decedent, and requiring Mrs. Canfield to account for the proceeds of the sale of fifty shares of Standard Gas and Electric, sold on October 20th, 1926; one hundred shares of G.W. Helm Company, Common, sold November 22d 1926, and fifty shares Briggs Manufacturing Company, Common, sold on February 9th, 1927. And, in addition thereto, at the option of the complainant, either compound interest compounded semi-annually from the date of each of the above-mentioned sales (Clark v. Clark, 87 N.J. Eq. 504, 509; Pom. Eq. Jur. ¶1076) or the profits of Mrs. Canfield resulting from her use of the decedent's securities and their proceeds in her marginal trading account. Condit v. Blackwell (Court of Errors andAppeals), 22 N.J. Eq. 481; General Proprietors of Eastern NewJersey v. Force's Executors, 72 N.J. Eq. 56 (at p. 127);Staats v. Bergen (Court of Errors and Appeals), 17 N.J. Eq. 554,562, 563; Pom. Eq. Jur. ¶ 1076. *Page 553