[No. 13953. In Bank. — September 5, 1891.]"

## M. L. FERGUSON, RESPONDENT, *v.* ALEXANDER McBEAN·ET AL., APPELLANTS.

VENDOR AND PURCHASER — ASSIGNMENT OF CONTRACT OF PURCHASE — AGREEMENT BETWEEN ASSIGNOR AND ASSIGNEE — PAROL EVIDENCE TO BIND JOINT ASSIGNEE NOT NAMED. — An assignor of a written contract for the purchase of land, who claims that the assignment was in fact made to two assignees jointly, each of whom was known to the assignor, although but one assignee was named in the written assignment, cannot show by parol evidence that a contract executed between the assignor and

the assignee named, in consideration of the assignment, which did not name nor by any of its terms purport to bind the other alleged assignee, was intended to bind both of them.

ID. — PAROL EVIDENCE TO DEFEAT RIGHTS OF ASSIGNOR. — In an action by the assignor against his assignee to recover the amount due as consideration for the assignment, parol evidence that the contract assigned was the property of a third party other than the assignor is properly excluded. The assignee cannot be excused from paying the price agreed because some one else may have a right to claim it from his assignor.

ID. — LIABILITY OF ASSIGNEE — COLLUSION TO DEFEAT RIGHTS OF ASSIGNOR. — PROCURING DEED UNDER NEW CONTRACT — RELEASE OF FIRST CONTRACT BY BENEFICIAL OWNER. — The assignee of a contract of purchase, who has agreed to pay a sum to the assignor in consideration of the assignment, cannot escape liability therefor by collusion with other parties, to procure the benefit of the contract, without a formal assignment thereof, under the pretense that a conveyance from the vendor was made in pursuance of a new contract of purchase after a release of rights under the first contract, from a person claiming to be beneficial owner thereof, the purchase-money paid under the first contract being credited upon the new contract at the time of the conveyance. The assignee is especially liable on his promise to the assignor, if he was a participant in the alleged new purchase.

PRINCIPAL AND AGENT — CONTRACT WITH AGENT — LIABILITY OF UNDISCLOSED PRINCIPAL. — An undisclosed principal may be sued upon a contract taken exclusively in the name of his agent, if the principal is unknown to the other contracting party at the time of the contract, but, not when he is known, and especially not when he is present at the time of the making of the contract.

ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATION. — A statement made to an attorney in respect to a matter concerning which he is not the attorney of the party making the statement, or a statement made to an attorney with the purpose of having it communicated to others, and not intended to be confidential, is not a privileged communication.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Hendrick & Younkin,* and *E. Crossman,* for Appellants.

When the terms of an agreement have been reduced to writing by the parties, the writing is the sole evidence of the agreement, unless a mistake or imperfection in the writing is put in issue by the pleadings. (Code Civ. Proc., secs. 1856, 1625; *Schurtz* v. *Romer,* 82 Cal. 477; *Booth* v. *Hoskins,* 75 Cal. 274; *Jungerman* v. *Bovee,* 19 Cal. 354; *Goldman* v. *Davis,* 23 Cal. 256; *Guy* v. *Bibend,*

41 Cal. 325; *Tyler* v. *Stone*, 81 Cal. 236; *Dewitt* v. *Berry*, 134 U. S. 306; *Ward* v. *McNaughton*, 43 Cal. 159; *Osborn* v. *Hendrickson*, 7 Cal. 285; *Kritzer* v. *Mills*, 9 Cal. 22; *Peabody* v. *Phelps*, 9 Cal. 228; Chitty on Contracts, 103; Bishop on Contracts, 169; 1 Greenl. Ev., secs. 278–282.) The court erred in not permitting the defendant to show by the testimony of the plaintiff that she told Crossman that, inasmuch as McBean had been unable to get the money to make the purchase with, if Raynor could get the money from Lowell, he might purchase the land himself. The question was not one of such a nature as to be privileged. (1 Greenl. Ev., secs. 244, 245; *Satterlee* v. *Bliss*, 36 Cal. 507.) Where an attorney has acted as the attorney for both parties to a transaction, either may compel him to testify against the other. (*In re Bauer*, 79 Cal. 312; 1 Wharton on Evidence, sec. 587; 1 Greenl. Ev., secs. 244, 245.)

*Hunsaker, Britt & Goodrich,* and *Rowell & Rowell,* for Respondent.

That it is admissible to charge an unnamed principal (except in the case of negotiable instruments), and to introduce a new party, but never to discharge an apparent party to a contract, is established by a long list of authorities in both England and in this country. (*Trueman* v. *Loder*, 11 Ad. & E. 589; *Jones* v. *Littledale*, 6 Ad. & E. 486; *Sims* v. *Bond*, 5 Barn. & Adol. 393; *Wilson* v. *Hart*, 7 Taunt. 295; *Ford* v. *Williams*, 21 How. 287; *Stowell* v. *Eldred*, 39 Wis. 614; *Weston* v. *McMillan*, 42 Wis. 567; *Matterson* v. *Boyce*, 29 Hun, 456; *Briggs* v. *Munchon*, 56 Mo. 467; *Chandler* v. *Coe*, 54 N. H. 561; *Heffron* v. *Pollard*, 73 Tex. 96; 15 Am. St. Rep. 764; *Dietz* v. *Providence Washington Ins. Co.*, 31 W. Va. 851; *Brooks* v. *Minturn*, 1 Cal. 482.) Such parol evidence does not vary the contract, because those whom the contract on its face purports to bind are still bound, and by the very terms of the contract; but it shows that the contract binds another not named, for the reason that the act of the agent is the act of the principal. (See Hare and Wallace's notes to

*Thompson* v. *Davenport*, 2 Smith's Lead. Cas., 8th ed. 418–421, 429, 430.) The claim that the court erred in not permitting defendants to prove that Raynor, and not the plaintiff, was the real owner of the contract between the plaintiff and the Colton Land and Water Company, and that the plaintiff perpetrated a fraud in assigning the contract to them, is not worthy of serious consideration. If Raynor was really the owner, he alone could complain, and not the defendants. (*Cross* v. *Sacramento Savings Bank*, 66 Cal. 463; *Larco* v. *Casaneuava*, 30 Cal. 568; *Payne and Dewey* v. *Treadwell*, 16 Cal. 241; *Secrest* v. *Green*, 3 Wall. 744; *Comstock* v. *Ames*, 3 Keyes, 357; *Ritter* v. *Brendlinger*, 58 Pa. St. 69.)

Beatty, C. J. — In order to a proper understanding of the various questions involved in this appeal, it is necessary to state pretty fully the facts out of which the case arises.

On June 7, 1887, the plaintiff, a married woman living separate from her husband, entered into a written contract with the Colton Land and Water Company, whereby said company agreed to sell and she agreed to purchase certain real estate, situate in San Bernardino County, for the sum of fifty-seven thousand dollars, to be paid, one thousand dollars cash on the delivery of the agreement, one third of the balance in fifteen days, and the remaining two thirds in six and twelve months. It was stipulated that time was of the essence of the contract, and that failure by the vendee to comply with its terms should release the vendor from all obligation to convey, and work a forfeiture of all sums paid. It was further stipulated that at the time of paying the first one third of the purchase-money the vendee should procure from one P. A. Raynor a release and settlement of certain claims of Raynor against the vendor then in litigation.

In pursuance of the contract, and at the date of its delivery, Mrs. Ferguson made the cash payment therein provided of one thousand dollars, and thereafter obtained the consent of the vendor, indorsed in writing on the

contract, extending the time for making the second payment to and including the twelfth day of July, 1887.

At the time of obtaining the extension, she assigned the contract to the defendant McBean; that is to say, her written assignment was to McBean alone, but she claims that it was in fact made to the defendants McBean and Bills jointly, such being the understanding and intention of the parties.

In consideration of said assignment, she received from McBean a contract in writing, signed by him alone, in the following terms: —

"It is hereby agreed on the part of Alexander McBean, of Oakland, California, to and with Mrs. M. L. Ferguson, that in case the said Alexander McBean shall sell or purchase the interest of the Colton Land and Water Company in and to certain lands, water, and agreements held in common with P. A. Raynor, under and by virtue of an agreement by and between said company and M. L. Ferguson, dated June 7, 1887, or any extension of time granted by said company or which may be given to said McBean, that he will pay to said Mrs. M. L. Ferguson or assigns the sum of three thousand dollars at the time of the consummation of said sale or purchase.

"Witness my hand and seal this thirtieth day of June, 1887.

"[Seal.]    ALEXANDER McBEAN."

But although executed only by McBean, the plaintiff claims that this was understood to be and was equally the contract of Bills.

Bills is a step-son of McBean, and it clearly appears that they were not only connected very closely in their personal relations, but that they were, at and about this time, engaged in the same kind of speculation in the same locality, and generally conversant each with the doings of the other. But they both deny that Bills had anything to do with the transaction between McBean and the plaintiff.

Shortly before the time for making the second payment, McBean, who had gone to San Francisco, as he

says, for the purpose of raising money or interesting parties with means to conclude the purchase, telegraphed to Colton announcing his failure, whereupon the plaintiff exerted herself, as she claims, to procure money for Bills, in order that he might make the second payment and prevent a forfeiture of the contract. She claims that she did raise this money, and that Bills used it in making the second payment, and in obtaining a conveyance of the property in pursuance of the contract. The defendants deny this, and claim, on the contrary, that the money procured through the exertions of plaintiff was obtained for P. A. Raynor, who, in conjunction with Bills, subsequently purchased the same property mentioned in the contract, not, however, in pursuance of its terms, but under a separate and independent agreement entered into between them and the owner after the expiration of the time as extended for plaintiff's second payment.

As to all these matters, the evidence is extremely conflicting, but it is not disputed that on the twelfth day of July, the very last day for making the second payment under plaintiff's contract, Bills went to the office of the Colton Land and Water Company, and proposed to purchase the identical property described in the contract, and offered to pay on the purchase the same amount stipulated in the contract as a second payment. The company refused to entertain his proposition, unless he produced the release of Raynor's claims as provided by the contract. He offered to comply with this condition if they would give him until the next day to get the release, to which offer the company assented, and accordingly, on the following day, July 13th, Bills delivered Raynor's release, paid the sum of nineteen thousand dollars, and received a conveyance of the land to himself. In making the purchase he claimed and received credit for the one thousand dollars originally paid by the plaintiff; that is to say, he was credited on the purchase price of fifty-seven thousand dollars with the full sum of twenty thousand dollars, although he paid but nine-

teen thousand dollars, and gave his notes for the balance of thirty-seven thousand dollars, secured by mortgage on the land.

After the conclusion of the purchase, and on the same day, he conveyed a half-interest in the land to P. A. Raynor.

The plaintiff thereafter demanded of each of the defendants payment of the sum of three thousand dollars, as provided in the written contract of June 30th, above quoted, and payment being refused, she brings this action to recover that sum, with interest. In her complaint, after setting out her agreement for the purchase of the land, and alleging the payment of one thousand dollars at the date of its delivery, she proceeds as follows: " That on the thirtieth day of June, A. D. 1887, plaintiff, at the special instance and request of defendants, assigned to them the contract aforesaid, and all her interest therein, the said defendants and each of them promising and agreeing that in case they or either of them should purchase or sell the property of the said Colton Land and Water Company, and make the payments to said company as in said contract specified, and within any extension of time granted in which the same might be made, that they or either of them would pay to plaintiff the sum of three thousand dollars; and at the time of the making of said agreement between plaintiff and defendants, it was agreed that the written evidence thereof should be between plaintiff and defendant McBean, but that defendant A. Bills should be equally interested therein, and that such written agreement should be binding upon both of defendants alike; and in case of either of the defendants purchasing or selling the said property of the said Colton Land and Water Company, they would pay to plaintiff the sum of three thousand dollars; and that pursuant to said understanding, defendant Alexander McBean drew and signed the instrument in writing, of which the following is a copy [here follows a copy of the contract of June 30th, above quoted]; and that the consideration for which said

assignment was so made to defendants was their agreement to pay said sum of three thousand dollars as aforesaid."

She then alleges a purchase of the property by defendants on July 12th, demand on them for payment of three thousand dollars, as provided by the contract of June 30th, and their refusal to pay, and prays judgment for that sum and interest.

To this complaint each of the defendants demurred generally for the want of facts, and specially on the ground of misjoinder of defendants, in that it appeared that Bills was not a party to or interested in the contract set out in the complaint.

Their demurrers being overruled, the defendants answered separately, McBean denying that he ever bought any of the lands described in the contract, and Bills denying any connection with the contract of June 30th, or that he ever bought any land under or by virtue of plaintiff's contract with the Colton Land and Water Company; but neither defendant denied that said contract had been assigned to them.

Upon these pleadings the parties went to trial, but during the progress of the trial, and after most of the evidence was in, the defendants, by leave of the court, filed amended answers, in which they separately denied any assignment of the contract of the Colton Land and Water Company to Bills, amplified their original denials on other points, and set up two additional defenses: 1. That plaintiff was, at the commencement of the action, the wife of one J. B. Ferguson, and that the action did not concern her separate property; 2. That plaintiff was never the real owner of the contract of June 7th, which she pretended to assign to McBean, but that said contract, with all its rights and privileges, belonged to P. A. Raynor, and that plaintiff, knowing that Raynor was such owner, in making said pretended assignment, was willfully and knowingly attempting to defraud McBean out of the sum of three thousand dollars.

The case was tried by the court without a jury, and

the findings and judgment were for the plaintiff.  Defendants moved for a new trial, which was denied, and they unite in an appeal from the judgment and said order.

The most important question involved in the appeal is as to the liability of Bills on the contract upon which the action is founded.

This question is raised not only by the demurrers to the complaint, but by numerous exceptions taken at the trial to rulings of the superior judge admitting oral testimony to the effect that Bills, although not named therein, was nevertheless a party to said contract.

According to plaintiff's testimony, she knew at the time of the assignment of her contract that Bills was to be equally interested with McBean in the rights assigned, and was to be equally bound to pay the three thousand dollars.  According to all the testimony, Bills was then present in San Bernardino, and in direct communication with the plaintiff.  His interest, in other words, was fully disclosed at the time, and no reason existed, at least none is alleged, why he was not named as an assignee, and as a party to the agreement to pay for the assignment.  In short, it appears by the testimony, more fully than by the complaint, though we think not more plainly, that the plaintiff deliberately chose to accept a contract in writing which did not name, nor by any of its terms bind, one of her intended assignees.

Can she, under such circumstances, claim that he is bound?  This is a question upon which there is a great conflict of authority in this country and England, and an adequate review of the cases in which it has been agitated would require a volume.  We have neither time nor inclination to enter upon any such review, but content ourselves with saying that, in our opinion, the better reason and sounder policy are against the proposition.  In England the rule seems to be pretty well settled, after much debate, the other way; but in the United States the weight of authority seems to be against the English rule.

The cases in which the question has arisen are those in which an agent has contracted in his own name, and his principal has afterwards sued or been sued on the contract, and Judge Story, in his work on Agency, section 160 a, says that the doctrine maintained in the more recent authorities is, that "if the agent possesses due authority to make a written contract, not under seal, and he makes it in his own name, whether he describes himself to be an agent or not, or whether the principal be known or unknown, he, the agent, will be liable to be sued and be entitled to sue thereon, and his principal also will be liable to be sued and be entitled to sue thereon in all cases, unless from the attendant circumstances it is clearly manifested that an exclusive credit is given to the agent, and it is intended by both parties that no resort shall in any event be had by or against the principal upon it."

But an examination of the authorities cited in support of this statement shows that they do not support it, as has been frequently pointed out.

It is undoubtedly true that when the principal is undisclosed he may sue or be sued, but not when he is known, and especially not when he is present at the making of the contract.

For a full and able discussion of the whole subject see *Chandler* v. *Coe*, 54 N. H. 561, and *Gillig* v. *Road Co.*, 2 Nev. 216, and cases therein cited.

Considered independent of authority, we think sound policy requires the enforcement, in cases such as these, of the general rule that a writing cannot be varied by parol. It is as important to know who has made a contract as to know its terms; and when the parties put it in writing, there is no more reason or excuse for omitting the name of a known party, whom it is the intention to bind, than there is for omitting its most important stipulation. To allow such a practice opens the door, in every case, to such conflicts of evidence as this case illustrates upon a point which can be easily and forever set at rest by simply making the written evidence of the

contract conform to the mutual understanding of the parties as to matters fully within their knowledge.

We think the superior court erred in overruling the demurrers, and in admitting the testimony referred to. This error compels a reversal of the judgment and order appealed from, but as a new trial will be necessary, it is proper that we should dispose of some other questions likely to arise in the further progress of the case.

Although the plaintiff cannot recover on this contract against Bills, we see no reason why she may not recover against McBean upon pleadings properly amended. All the evidence in the record indicates pretty clearly collusion between McBean and Bills and Raynor, by means of which the two last named obtained the benefit of plaintiff's assignment to McBean. If in fact McBean turned the contract over to Bills and Raynor without a formal assignment of it, and they got the benefit of the assignment, and especially if McBean was a participant in their purchase, he became liable on his promise to pay the three thousand dollars.

The court erred in sustaining an objection to the offer to prove what plaintiff told Crossman, on the ground that it was a privileged communication. Crossman, as to that matter at least, was not the attorney, if he was her attorney at all, and moreover the statement, if made, was not intended to be confidential, but was made with the purpose of having it communicated to others.

The court did not err in excluding evidence that the contract with the Colton Land and Water Company was the property of Raynor. Whether it was or not is a question between Raynor and the plaintiff, to be litigated by them or their representatives. McBean got a valid assignment, and cannot be excused from paying the price because some one else may have a right to claim it from his assignor.

There is barely sufficient, but certainly not very satisfactory, evidence to sustain the finding that the plaintiff was, at the beginning of the action, living separate and apart from her husband, by reason of his desertion of

her.   There is no positive or direct evidence that he went away without or against her consent.   And the evidence is likewise rather unsatisfactory on the point of the contract being her separate property; but we cannot say that it does not support the finding.

Other points made in the briefs are comparatively unimportant, and need not be particularly referred to.

Judgment and order reversed, and cause remanded, with directions to the superior court to sustain the demurrers to the complaint, with leave to the plaintiff to amend as she may be advised.

DE HAVEN, J., PATERSON, J., SHARPSTEIN, J., McFARLAND, J., HARRISON, J., and GAROUTTE, J., concurred.