[Civ. No. 376. Third Appellate District.—November 20, 1907.]

ELIZABETH NOBLES (Formerly ELIZABETH HUTTON), by C. M. CURLEY, Her Guardian, Respondent, v. D. D. HUTTON, Appellant.

ACTION TO SET ASIDE DEED—WANT OF CONSIDERATION—FIDUCIARY RELATIONS—FRAUD AND UNDUE INFLUENCE—SUPPORT OF FINDINGS.— In an action to set aside a deed executed by a mother to her son, where the court found that when the deed was executed, the plaintiff was old, infirm, of failing memory, and of unsound mind, and by reason thereof incapacitated from attending to business, and defendant took advantage of such incapacity, and procured her to sign and acknowledge the deed without consideration; that the plaintiff was without independent advice, and that defendant by taking advantage of plaintiff's mental weakness, and by the use of undue influence arising out of the relationship between them of mother and son and of principal and agent, induced plaintiff to execute the deed; *held*, that the findings are substantially supported by the evidence and that a case of breach of fiduciary relations, and of constructive fraud and undue influence, are clearly established, entitling plaintiff to avoid the deed.

ID.—INCAPACITY NOT OF PARAMOUNT IMPORTANCE—Although there is some evidence tending to sustain the finding of the plaintiff's incapacity and of her inability to understand the nature and result of the deed, yet her incapacity to that extent is not of paramount importance in view of the other facts presented by the record, establishing the breach of fiduciary relations and constructive fraud and undue influence.

ID.—GIFT TO AGENT—UNDUE INFLUENCE EASILY EXERCISED—PRESUMPTION OF FRAUD—BURDEN OF PROOF.—A gift of valuable property by a principal to an agent under circumstances in which undue influence

of the agent over the principal may be easily exercised, is by pre-sumption of law tainted with fraud, and the burden of showing the good faith of the same is on the donee, and when he fails to sustain such burden, the transaction must be avoided.

ID.—PRESUMPTION—FRAUD BETWEEN PARENT AND CHILD—ADVANTAGE TAKEN OF FEEBLE MIND—FRAUD UPON OTHER CHILDREN—BURDEN NOT SUSTAINED.—The relation of parent and child, where business transactions are carried on between them, is the source of the very highest consideration of confidence and trust. Where a parent, if not totally incompetent, was so old and enfeebled in mind that she might readily be imposed upon by her son, who induced her to leave her home and reside with him and to convey her property to him to the exclusion of other children who were filial and in amicable relation with their mother, the transaction is presumptively fraud-ulent, and will be avoided where the son does not sustain the bur-den to show that the deed was made freely and voluntarily with full knowledge of all the facts, and with perfect understanding of the effect of the transfer.

ID.—INDEPENDENT ADVICE ESSENTIAL.—Persons standing in a confiden-tial relation toward others cannot entitle themselves to hold bene-fits which others may have conferred upon them, unless they can show to the satisfaction of the court that the person by whom the benefits have been conferred had independent advice in conferring them, which should be given in private by some one of such per-son's own selection, and when the grantor is not surrounded with dominating influences favoring the transfer.

ID.—EVIDENCE OF MENTAL INCOMPETENCY—QUESTION OF FACT.—Where a question of mental incompetency is involved, although it relates primarily to the time when the act was performed, yet evidence of the mental condition of the grantor before and after the execution of the deed is competent as bearing upon that question, and the question is one of fact to be determined by the trial judge, who is the exclusive judge of the credibility of the witnesses.

ID.—TESTIMONY OF PERSONS ACQUAINTED—REMOTE KNOWLEDGE—HARMLESS RULING—OBJECTIONS.—The admission of testimony of persons who were formerly intimately acquainted with the plaintiff on the subject of her mental incompetency, but not recently ac-quainted with her mental condition, goes rather to the weight than to the admissibility of the testimony, but under the other facts in the case, any error in admitting the evidence of incompetency is harm-less.

ID.—EVIDENCE OF WANT OF CONSIDERATION FOR DEED.—Evidence of witnesses to knowledge of the fact that no consideration was paid for the deed was admissible, not as contradicting the written instru-ment, but for the purpose of showing that it was void because ob-tained without consideration, by fraud and undue influence.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

Weldon & Held, for Appellant.

W. G. Poage, and Thomas, Pemberton & Thomas, for Respondent.

HART, J.—The purpose of this action is to set aside a certain deed, purporting to convey the lands therein described to defendant, and to quiet title to said lands.

The plaintiff, having been, prior to the commencement of this action, adjudged by the superior court to be an incompetent, and a guardian of her estate and person thereupon appointed, brought the suit and is a party hereto by her general guardian.

Judgment was awarded to plaintiff, setting aside the deed and quieting her title to the lands alleged to have been thereby conveyed.

The appeal is from the judgment and the order denying defendant a new trial.

The defendant is a son of the plaintiff, and it is charged in the complaint that the latter, while in a state of mental incompetency, conveyed to the defendant, without a valuable consideration, the lands involved in this controversy.   It is alleged that the plaintiff, by reason of the infirmities of old age, was without capacity to transact business, or to realize and understand the effect of her act in executing said deed to defendant; that she was illiterate and unable to read, and at the time of the transaction complained of had no opportunity to secure and receive the counsel and advice of any other relative, friend or acquaintance; that the plaintiff was taken by the defendant and his wife to Ukiah, a distance of about fifty miles from her home, and while among strangers, signed and acknowledged the deed; that defendant, taking advantage of the said infirmity of mind and illiteracy of plaintiff, and of his relationship to her, imposed upon said plaintiff and unduly influenced her to transfer to him said property, which, it is alleged, is of the value of about $60,000.

The court found that upon the seventeenth day of June, 1904, the day upon which the deed mentioned in the complaint was executed as alleged, the plaintiff was "old, infirm, of failing memory and of unsound mind, and by reason thereof at the time incapacitated from attending to business," and that defendant took advantage of such incapacity, and procured her to sign and acknowledge said deed, conveying to him the property described in the complaint, without any consideration therefor; that the plaintiff in the transaction was without independent advice, and that defendant "by taking advantage of plaintiff's mental weakness and by the use of undue influence arising out of the relationship existing between the parties hereunto, to wit, the relation of mother and son, and of principal and agent, and further taking advantage of the circumstances above recited, procured and persuaded plaintiff to sign and acknowledge" the deed which is the cause of this controversy.

The principal contention of the appellant is that the evidence is insufficient to support the findings. The testimony upon behalf of plaintiff upon the question of her alleged mental incompetency was mostly from witnesses who saw very little of her during several months prior to the date of the execution of the deed. But the witness, Avella, who was a lessee of the plaintiff of certain land, testified that he met and talked with her frequently, and that he noticed that her mind was failing and that she appeared to have a poor memory, etc. Avella said that, after he learned of the execution of the deed, by which she conveyed her property to the defendant, he mentioned the circumstance to her and that she denied having transferred the land to defendant. This witness expressed the opinion that plaintiff was incapable of understandingly attending to business. There was other testimony upon this point by witnesses who, as stated, had not seen much of plaintiff for three or four months before the transfer was made. Neighbors of plaintiff, testifying for the defense, stated that, up to the time of the transaction out of which this suit arises, she appeared to be of sound mind and fully capable of conducting her business affairs. The attorneys who drew the deed, and who were present when plaintiff signed and acknowledged it, testified that she seemed on that occasion to be intelligent and thoroughly appreciative of the nature and effect of the transaction. It would

7 Cal. App.—2

accomplish no useful purpose to go into all the testimony upon the point under consideration. It is sufficient to say that, while it may be admitted that the testimony offered and received in support of the allegation in the complaint of the mental incapacity of the plaintiff and her inability to understand and know the nature and result of the transaction involving the execution of the deed is by no means strong, so far as we are able to judge from the bare record, there is, nevertheless, some testimony to sustain the finding upon that point, and we are not prepared to say that the court was not justified in making said finding. Besides, we do not think that the proposition of the alleged mental incompetency of plaintiff to the extent that she was incapacitated for the transaction of business is of paramount importance in view of other considerations presented by the record.

The evidence shows that, besides the defendant, there were living at the time of the execution of the deed and when the trial was had, several children of plaintiff, and that between these children and plaintiff the most amicable filial relations existed. It further appears that the defendant had been, for some time prior to and up to the date of the conveyance to him of the property in dispute, the agent of plaintiff, acting as such under a power of attorney. It is also clear that, while, as we have suggested, the evidence may not be strong as to her alleged incompetency, there can be no doubt that the plaintiff had to some extent grown mentally feeble and of poor memory and was certainly in a condition of mind in which she could be easily influenced by one in whom she had confidence. The power of attorney to which we have referred clothed the defendant with authority to "sue for and collect all such sums of money, debts, rents, dues and accounts and other demands whatsoever, which are or shall be due, owing and payable to me or detained from me in any manner whatsoever," etc. The authority thus conferred upon the defendant does not, it is true, at least by express language, relate to the property in controversy, but if, as appellant contends, said power of attorney does not establish confidential and fiduciary relations between the parties as to the property in dispute, there is still much significance in the circumstance of defendant's agency of plaintiff in the fact of the *confidence* thereby reposed in the defendant by the plaintiff. The evidence shows that the plaintiff was induced

by the defendant, prior to the execution of the deed, to leave her farm and take up her residence with defendant and wife. And there is no reason shown why the plaintiff should have given the bulk, if not all, of her estate to the defendant to the exclusion of her other children.

The circumstances under which the transfer of the property was made to the defendant were, upon their face, such as to create suspicion as to the good faith of the transaction, so far as defendant's part in it was concerned. Indeed, the mere statement of the circumstances discloses, in our opinion, a strong case of constructive fraud. The judge of the court below, who saw and heard the witnesses, and who was in a position to determine the weight to which the testimony of the witnesses was entitled, upon the evidence through which the circumstances attending the transaction were developed, found that not only undue influence was practiced by defendant, but that the transaction was constructively fraudulent. With this finding we do not feel at liberty to interfere.

There is no room for doubt, under the evidence as presented here, that the relations existing between plaintiff and defendant were confidential and therefore of a fiduciary character. The evidence clearly shows that the plaintiff reposed in the defendant especial confidence and trust, and the court found that "defendant was at the time of the execution of said written instrument and for many months prior thereto had been continuously the agent of plaintiff and was by her intrusted with the management and conduct of all her business," etc.

The conclusion of the trial court from this finding was that the conventional fiduciary relations between plaintiff and defendant extended to all transactions between them relating to plaintiff's business affairs, whatever of her property they might involve, so far as any dealings defendant might have with her in his own behalf were concerned. With this conclusion we are, as before indicated, perfectly satisfied.

A relation of trust and confidence being established between these parties through the authority as agent vested in defendant by plaintiff, it was the duty of the former to act in perfect good faith in his dealings in his own behalf with said plaintiff in a transaction relating to her property, independent of any consideration of his duty toward her as

her son and in her enfeebled condition of mind.   When, there-
fore, he obtained from her, under the circumstances disclosed
by the evidence, valuable property—in fact, practically her
entire 'estate—admittedly without a valuable consideration,
the burden rested upon him to show that the fructification
of the transaction was not attained through fraud or undue
influence.   This is only a statement in different form of the
well-settled rule that a gift by one person to another occupy-
ing toward each other confidential relations is constructively
fraudulent, and, as the supreme court says in *Brison* v. *Brison,*
75 Cal. 529, [7 Am. St. Rep. 189, 17 Pac. 689], "is only to
be upheld upon a showing of special circumstances."   By
this it is not meant that it is impossible that such a gift may
be valid, but that such a transaction, under such circumstances
as are shown here, is by presumption of law tainted with
fraud and that the burden of showing the good faith of the
same is on the donee.   (See *Hays* v. *Gloster,* 88 Cal. 566,
[26 Pac. 367], and cases cited.)   This burden the defendant
failed to sustain—that is, he failed to show that the deed was
the result of the free agency of the grantor, or not "more
the offspring of his own than of her own will."

In *Pulsifer* v. *Paddock,* 43 Kan. 718, [23 Pac. 1049], where
a daughter obtained a deed from her aged and invalid father
to a valuable piece of land without consideration and which
conveyance was set aside, the Kansas supreme court lays
down the rule in cases of the character of the present one as
follows: "In such a case as this, the burden of establishing
the perfect fairness and equity of the conveyance to Mrs.
Paddock was thrown upon her, in view of her father's age,
sickness, and feebleness of mind, and the close relation of
the parties.   Confidence was necessarily reposed in Mrs. Pad-
dock.   If that confidence was abused in procuring the deed,
the trial court very justly set it aside."

Added to the "close" natural relationship of the parties
here is, it must always be remembered, the further relation
of confidence and trust created by the authority as agent con-
ferred upon the defendant by the plaintiff.

But the relation of parent and child, where business trans-
actions are carried on between them, is the source of the very
highest considerations of confidence and trust.   Confidence
in such a case originates in and proceeds from natural laws,
and, generally speaking, is innate and an essential part of the

nature of both, for in whom could a parent repose a greater degree of confidence than in him to whom has been directly transmitted his own blood, and over whom he has exercised parental dominion and discipline from infancy to matured manhood. So, when a son, dealing with his parent with regard to the latter's property, gains an advantage or obtains title to such property without adequate or any consideration, the transaction should, upon principles of equity and fair dealing, be scanned with the strictest scrutiny. And, *a fortiori*, should such transaction be examined circumspectly when the parent is, as here shown to be, aged and mentally infirm, even though not altogether incompetent, and where there are other children, for the exclusion of whom from the parent's estate no reasonable account is given or apparent. The books are full of cases illustrating the application of the principle as thus stated. In *Comstock* v. *Comstock*, 57 Barb. 453, a case in which an aged parent conveyed property to her son with whom she was living and the deed set aside, it is said:

"It is a well-settled rule of equity jurisprudence, that all gifts, contracts, or benefits, from a principal to one occupying a fiduciary or confidential relation to him, are constructively fraudulent and void. The court, in such cases, acts upon the principle that if confidence is reposed it must be faithfully acted upon; if influence is acquired it must be kept free from the taint of selfish interest, and cunning and overreaching bargains. In this class of cases there is often found some intermixture of deceit, imposition or overreaching advantage or other mark of positive or direct fraud. But the principle upon which courts of equity act in regard thereto stands independent of any such ingredient, upon a motive of general public policy. Among the relations subject to the foregoing ·rule are those of parent and child, attorney and client, and principal and agent."

We have examined with care all the authorities cited by appellant upon the point under discussion and find nothing therein inconsistent with the views here expressed. The case of *Soberanes* v. *Soberanes*, 97 Cal. 140, [31 Pac. 910], was an appeal from the judgment upon the judgment-roll alone. The court held that the findings could not be disturbed because, in the absence from the record of the evidence from which the findings were deduced, the evidence was presumptively

sufficient to sustain them. It is, however, said in that case: "Transactions like the one under consideration are watched by courts of equity with the most scrutinizing jealousy, and are generally held to be presumptively void. They will be set aside upon the discovery of the least fraud, and every presumption ought to be indulged against them. The person who makes the donation and bestows the confidence is not bound to show that any imposition has been practiced upon him. It is sufficient for him to establish intimate and confidential relations with the donee. Some of the cases hold that undue influence is not to be inferred from the relation of parent and child, where the gift is from the parent to the child (citing *Millican* v. *Millican*, 24 Tex. 446) ; *but where the parent is of great age, or is enfeebled by disease, and conveys his entire estate to one child, to the exclusion of other children dependent upon his bounty, the burden is unquestionably upon the donee to show that the gift was made freely and voluntarily, and with full knowledge of all the facts, and with perfect understanding of the effect of the transfer.*" (Citing *Todd* v. *Grove*, 33 Md. 194, and *Highberger* v. *Stiffler*, 21 Md. 338, [83 Am. Dec. 593].) The rule as it is declared in *Smith* v. *Mason*, 122 Cal. 426, [55 Pac. 143], while undoubtedly correct as applied to the circumstances under which the deed there was executed, seems to be rather broadly stated, and as construed by appellant is opposed to the whole current of authority upon the subject. But in that case it was not alleged or claimed that the grantor was incompetent in any respect to execute the deed to defendant, "nor that he at all mistook its contents, nor that defendant procured it by means of undue influence or fraudulent promises or, indeed, that she made any effort to obtain it."

Here, as seen, it is alleged and the proven circumstances show, that a confidential relation existed between the parties, and a conveyance made without consideration by one who, if not totally incompetent, was at least enfeebled in mind.

The evidence, as already appears, shows that for nearly a year before the deed was executed, the plaintiff resided with the defendant and his wife, and during that time was in constant association with and the companion of the latter. She had returned to her farm, but for the purpose of making the deed was brought by the defendant to Ukiah, and when the transaction was consummated she was attended only by

the defendant, his wife and the attorneys who were employed by defendant to attend to the business. According to the evidence and findings, she was not given independent advice, nor opportunity to secure it, and was compelled to rely solely for information and advice concerning the transaction upon the defendant and his wife.

It is a well-established principle that persons standing in a confidential relation toward others cannot entitle themselves to hold benefits which those others may have conferred upon them, unless they can show to the satisfaction of the court that the person by whom the benefits have been conferred had independent advice in conferring them. (*Yordi* v. *Yordi*, 6 Cal. App. 20, [91 Pac. 348, 351] ; *Rhodes* v. *Bate*, L. R. 1 Ch. 257; 2 Pomeroy's Equity, sec. 958; *Slack* v. *Rees*, 66 N. J. Eq. 447, [59 Atl. 466] ; *Coffey* v. *Sullivan*, 63 N. J. Eq. 296, [49 Atl. 520] ; *Haydock* v. *Haydock's Exrs.*, 7 Stew. (N. J. Eq.) 570, [38 Am. Rep. 385] ; *White* v. *Daly* (N. J. Ch.), 58 Atl. 929.) And the advice should be given in private by some one of her own selection and when the grantor is not surrounded with dominant influences favoring the transfer. (*Slack,* v. *Rees,* 66 N. J. Eq. 447, [59 Atl. 466] ; *Yordi* v. *Yordi,* 6 Cal. App. 20, [91 Pac. 348] ; *Coffey* v. *Sullivan,* 63 N. J. Eq. 296, [49 Atl. 520] ; *Haydock* v. *Haydock's Exrs.*, 7 Stew. (N. J. Eq.) 570, [38 Am. Rep. 385] ; *Pironi* v. *Corrigan,* 47 N. J. Eq. 135, [20 Atl. 227].) In the last-mentioned case, the language used is peculiarly appropriate here: ''It seems to me that the complainant, laboring, as she did, under the continued disadvantages of great age and of dense ignorance and inexperience, and dealing with a person in whom she had the utmost confidence, had especial need of, and was especially entitled to, and should have had the benefit of, a full, free, and *private* preliminary conference with a competent lawyer or business man, who was employed and paid by her, and in whom she had confidence, and who would be devoted to her interests, and hers only.''

There are innumerable other cases than those cited upon all the points involved in this case, sustaining the conclusions we have reached; but it would be useless to multiply authorities upon principles so well established and understood in their application to such circumstances as are found here. We may, however, state the sum of the case here in the language of *White* v. *Daly* (N. J. Ch.), 58 Atl. 929, particu-

larly pertinent to the facts in the case at bar: ''The situation is obvious—a relation of trust and confidence on the one side; and improvident deed, the product of that trust and confidence, on the other. That the influence was a constantly operating influence is undeniable; that it was an undue influence is demonstrated by the fact that the transaction was improvident, and that the only gainer by it was the person under whose influence the grantor was.''

As stated in the beginning of this opinion, the principal claim of the appellant why a reversal should be ordered is that the evidence does not support the findings. In their elaborate and able brief the learned counsel discuss at length and in detail the evidence to show that the findings are barren of sufficient support. It is declared that the evidence shows that some of the witnesses for plaintiff are interested in the result of the action—a fact which we are asked to consider—and that most of the testimony upon the mental condition of the plaintiff is worthy of but little weight, because it relates to a time anterior and subsequent to the date of the execution of the deed, and that, consequently, she failed to make out a case of incompetency at the very time the deed was signed and acknowledged. It is true that the test in a case of this character, where mental incompetency is relied upon to set aside an instrument transferring property, is the condition of the party whose act is challenged upon that ground *at the time said act was performed;* but it is also true that testimony as to the mental condition of the party before and after the time of the making of the instrument is admissible for the purpose of disclosing circumstances tending to show her probable condition of mind at the time of the transaction. As before stated, however, the evidence and its weight are matters for the trial judge trying the facts to pass upon and determine, and his conclusions thereon, where, as here, there is some evidence to show plaintiff's incompetency when she made the deed, could not be interfered with by a reviewing court, unless there appeared from the record such inherent weakness in the proofs as to justify an appellate court in saying that, as a matter of law, they do not sustain the findings. A trial judge, to whom is submitted the decision of questions of fact, may disbelieve the uncontradicted testimony of certain witnesses and ignore it

altogether. This, under our system, is his right and within his province as a trier of the facts.

But, as we have attempted to show, even if it may be said that, as a matter of law, the evidence upon mental incompetency is, upon its face, too weak to support the finding upon that point, there are other considerations presented by the record which, being fully supported by proof, positive and presumptive, justify the judgment.

Certain rulings of the court to which exceptions were reserved at the trial are assigned here as prejudicial errors. The witness, Nobles, husband of plaintiff, from whom he had been separated for about a year, and who had not seen her for nearly a year, was permitted, over an objection, to give his opinion, as an intimate acquaintance (Code Civ. Proc., sec. 1870, subd. 10), of the mental competency of the plaintiff. The objection was upon the ground that the witness had not been shown to have seen the plaintiff on the day of the transaction, etc., and also as to the form of the question. The witness, Hayward, asked the same question, was allowed, over objection, to give his opinion as to plaintiff's mental condition. He had not seen her very often for two years prior to the date of the deed, and the objection was that he was not competent to give his opinion within the meaning of the section of the code admitting such an opinion from an intimate acquaintance. These objections, except as to the form of the questions, were rather to the weight than the competency of the testimony. The form of the questions may not have been strictly within the language of the section, yet the purpose of them was to elicit opinions as to plaintiff's mental sanity. The questions were not as to whether plaintiff was competent to make a transfer of her property (*Estate of Taylor,* 92 Cal. 564, [28 Pac. 603]), but as to her "mental competency." But under the views we have expressed concerning the issue as to mental incompetency the rulings, even if erroneous, are harmless.

It is also contended that the court erred in permitting the witnesses, McNab and Hirsch, to testify that no actual consideration passed for the deed at the time it was executed. In support of this contention the cases of *Hendrick* v. *Crowley,* 31 Cal. 472, and *Arnold* v. *Arnold,* 137 Cal. 296, [70 Pac. 23], are cited. These cases do not sustain the contention. In the last-mentioned case, the court, after declaring the

very elementary proposition that the terms of a written contract cannot be varied and defeated by parol testimony, says: "No fraud, no undue influence, no mistake was averred or sought to be proved." The testimony here was not offered to vary the terms of a valid written contract, but for the purpose of showing that the instrument was void because obtained by fraud and undue influence.

We find no prejudicial errors in the record.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 20, 1907, and the following opinion was then rendered thereon:

HART, J.—We have carefully examined the petition for a rehearing herein and observe nothing therein persuading a different conclusion from that arrived at in the main opinion. The petition involves practically only a repetition of an argument based upon the evidence and the facts thereby established. We are unable now, as we were upon the original investigation of the record, to see our way clear to hold that the evidence, as a matter of law, is insufficient to sustain the findings of the trial court.

Our attention has, however, been called to two immaterial inaccuracies in the statement of the facts in the original opinion. We therein stated that *prior* to the commencement of the action the plaintiff, Mrs. Hutton, had been declared an incompetent and a guardian of her estate and person thereupon appointed by the superior court. The fact is, as we find upon re-examination of the record, she began the action *before* she was adjudged an incompetent, and the proceeding in which she was so declared was consequently had after the suit was instituted.

We also stated that Mrs. Hutton, prior to the execution of the deed, was induced to leave her *farm* and take up her residence with defendant and wife; whereas, the record discloses that she was living in town at the time she was separated from her husband and that thereafter she went to the home of the defendant.

It is too clear to justify the time in making the suggestion that these immaterial inaccuracies cannot, in the remotest de-

gree, affect the conclusion at which we arrived in the original opinion.

It must be plainly manifest that whether Mrs. Hutton was declared an incompetent before or after the commencement of the suit could have very slight material bearing upon the question of her competency at the time of the transaction from which the suit arises. And whatever weight the circumstance, happening as it really did, might carry, was for the jury to determine.

Still less could the fact of her having been taken from her home in Ukiah to the residence of the defendant, before the deed was signed and acknowledged, influence the determination of the ultimate facts in the case.

The petition for a rehearing is denied.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 16, 1908.