[Civ. No. 6577. Third Dist.—May 17, 1941.]

LUCILE HATCH, as Special Administratrix, etc., Respondent, v. BARBARA CLARK PENZNER et al., Appellants.

Milton M. Cohen, Milton M. Cohen, Jr., and Olson & Ahlport for Appellants.

Henry G. Bodkin, Theodore C. Heyl, George H. Pratt and Stuart Silliman for Respondent.

THOMPSON, J.—This is an appeal from a judgment in favor of the plaintiff rescinding conveyances by the deceased, Irma Clark Ryan, of real and personal property to the defendants, on the ground that they were procured by fraud, and awarding plaintiff the reasonable value thereof. An accounting was had to determine the market value of the property. Findings were adopted and filed December 16, 1938. The judgment was entered December 24, 1938. A subsequent decree determining the value of the property was rendered September 5, 1939. A separate notice of appeal was given from each judgment.

The appellants contend that the findings and judgments are not supported by the evidence and that the subsequent decree determining the market value of properties which were converted by them is ineffectual and void.

Irma Clark Ryan was formerly the wife of Charles N. Hatch, by whom she had two daughters, the plaintiff Lucile

Hatch, and Galen Hatch. Mr. and Mrs. Hatch were divorced about 1909. Mrs. Hatch subsequently married Albert J. Clark, who died in July, 1930. Mr. Hatch died in July, 1929. The defendant, Barbara Clark Penzner was born as the issue of the second marriage. Barbara is the wife of the defendant, William L. Penzner. Mrs. Clark later married William Ryan, from whom she was divorced in December, 1935. She thereafter resided by herself in Los Angeles. She was possessed of real and personal property of the aggregate value of about $135,000, most of which was in the form of stocks and bonds. She possessed little business experience or ability. In 1929 she executed a declaration of trust to the Citizens National Bank of Los Angeles of all of her property, which trust was revocable at will. Mrs. Ryan was afflicted with disease and chronic alcoholism which greatly impaired her mental and physical condition and rendered her unfit to transact business affairs much of the time. She lost a large part of her property. At the time of her death she was possessed of property of the aggregate value of only about $50,000. She had great confidence in her daughter Barbara and her husband, William L. Penzner, who also resided in Los Angeles.

In May, 1937, the defendants persuaded Mrs. Ryan to live with them in their home at Los Angeles by promising her they would take care of her and her affairs during her lifetime. About a month after she became a resident in their home, they selected an attorney who conferred with her and persuaded her to revoke the declaration of trust with the Los Angeles bank. About that time she was induced to and did make a bad investment in a certain beer garden enterprise. She also withdrew funds and paid numerous bills in behalf of Mr. and Mrs. Penzner aggregating the sum of about $34,000. Some time in 1935 or 1936, the defendants visited Mrs. Ryan at the Las Encinas Sanitarium where she was then a patient, and induced her to sign a note payable to them in the sum of $7,500, which they claimed was to be used for financing an investment. The note was not returned to the maker. Mrs. Ryan was sent for treatment to sanitariums on several occasions. Her daughter, Barbara Penzner, once filed a petition to have her mother declared incompetent. While Mrs. Ryan lived with the defendants she was often under the influence of liquor. The respondent testified

that her mother told her the defendants "kept her drunk most of the time" and that they locked her in the bathroom. At the time the declaration of trust was revoked by Mrs. Ryan and when her property was turned over to her by the bank, she was accompanied by Mr. Penzner. Subsequently she was persuaded to transfer all of her property, including nearly $40,000 worth of stocks and bonds to the defendants. She was suffering from several ailments together with chronic alcoholism. She rapidly became infirm and mentally and physically weak. A few days before her death she was taken by the defendants to Mrs. Woodall's Rest Home for care and treatment. Doctor Charles W. Thompson, the Medical Director of the Las Encinas Sanitarium, who visited her, testified that "she was very greatly confused, and she appeared greatly demented". She died August 6, 1937.

Upon petition therefor, Lucile Hatch was duly appointed special administratrix of the estate of her mother, Irma Clark Ryan. This suit to cancel the transfers of property and to recover the property or the reasonable market value thereof was commenced September 10, 1937. It is in the nature of an equitable action to rescind a trust on the ground of fraud.

The finding of the court that the defendants are impecunious and unable to respond to a monetary judgment against them is immaterial. There is some evidence to support that finding, but it is conflicting. The appellants fail to indicate in their briefs how that finding would be material or prejudicial to them. The complaint asked for an order restraining the defendants from disposing of the stocks, bonds and other property involved, during the pendency of the action. That restraining order was waived at the trial on the assurance of the attorney for defendants that, "The property has been kept. . . . The estate is more valuable now than it was on October 8, 1937, by at least $10,000.00." Concerning that issue, this colloquy occurred: "Mr. Bodkin: . . . I take it that it will be stipulated that that property will not be disposed of during the pendency of this action? . . . Mr. Cohen: Yes; sure." Pursuant to that stipulation, it was assumed the properties would be retained by the defendants and that they would be delivered in kind to plaintiff in the event of a judgment in her favor, and not otherwise disposed of. The original judgment which was entered December 24,

1938, determined that the properties belong to the estate of Irma Clark Ryan, deceased; that they had been procured by the defendants by means of fraud, and that they should be delivered to plaintiff forthwith, or upon failure to do so within ten days from the date of the judgment, an accounting thereof should be had to ascertain the value of the properties and that a judgment would then be entered against defendants for that value. It was also decreed that the other properties obtained and held by them in exchange or on sale of estate properties should be delivered to the plaintiff. None of the properties were delivered to plaintiff. After a lapse of about eight months, the court proceeded to hold the accounting and determined the market value of the properties, entering a subsequent decree for the aggregate value thereof, together with a lien against certain real properties held by the defendants to secure loans of money made by them from the trust estate.

The court retained jurisdiction in the equitable action to enforce the original judgment. (*Murphy* v. *Bucke's Department Store,* 199 Cal. 194 [248 Pac. 668]; *Los Angeles A. T. Co.* v. *Superior Court,* 94 Cal. App. 433 [271 Pac. 363]; 10 Cal. Jur. 559, sec. 96.) The defendants were not prejudiced by the accounting or the entry of the subsequent decree. It merely enforced the provisions of the original judgment. It is immaterial that the original decree was termed "interlocutory judgment". The defendants appealed from both decrees and they have presented on this appeal every issue upon which they rely.

There is adequate evidence to support the finding that the deceased sustained a confidential relationship toward the defendants. Mrs. Ryan received no valuable consideration for the property which she transferred to them. They represented to her that Mr. Penzner was a competent, successful businessman and that they would take care of her and her properties if she would convey the properties to them and live with them in their home. Relying on those promises she did so. The court was warranted under such circumstances in finding that a confidential relationship existed between them and the mother. (*Cooney* v. *Glynn,* 157 Cal. 583 [108 Pac. 506]; *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430]; *Campbell* v. *Genshlea,* 180 Cal. 213 [180 Pac. 336]; *Mead* v. *Mead,* 41 Cal. App. 280 [182 Pac. 761]; *For-*

*man* v. *Goldberg,* 42 Cal. App. (2d) 308 [108 Pac. (2d) 983] ; 20 Cal. Jur. 443, sec. 41; 13 Cal. L. Rev. 174.) It is true that the mere relationship of mother and daughter is insufficient evidence upon which to raise the presumption of fraud. (*Best* v. *Paul,* 101 Cal. App. 497 [281 Pac. 1089].) But the lack of consideration and unjust profit received by the defendants in the present case shift the burden to the defendants to show that the transaction was fair and free from undue influence or fraud. (*Campbell* v. *Genshlea, supra; Johnson* v. *Clark,* 7 Cal. (2d) 529 [61 Pac. (2d) 767].)

 In the case last cited it was held that where property was obtained by means of fraud, either actual or constructive, the transfers will be set aside at the instance of the owner or his representative, and the grantee will be deemed to hold the title thereto as a constructive trustee. (Civ. Code, sec. 2224.) If the property has been sold by the grantee, the owner will be entitled to recover the proceeds of sale, or he may be entitled to judgment for the reasonable value of the property so converted. (*Johnson* v. *Clark, supra.*) The preceding rule is peculiarly applicable where a parent conveys all of her estate to one child to the exclusion of other children, without monetary consideration. (*Pleasants* v. *Hanson,* 48 Cal. App. 626 [192 Pac. 183] ; *Nobles* v. *Hutton,* 7 Cal. App. 14 [93 Pac. 289].)

 It was not necessary to prove that Mrs. Ryan was insane or totally incompetent to justify the cancellation of the transfers of her property to the defendants. The evidence of mental and physical weakness as the result of physical ailments or chronic alcoholism, or both, coupled with the confidential relationship between her and her daughter Barbara, and the fact that she conveyed all of her property without valuable consideration to the defendants to the exclusion of her other daughters is sufficient to support the findings and judgment. (12 C. J. S. 976, sec. 26 a and b; *Soule* v. *Wyatt,* 30 Cal. App. 778 [159 Pac. 447] ; *Pleasants* v. *Hanson, supra*; *Payne* v. *Payne,* 12 Cal. App. 251 [107 Pac. 148] ; *Nobles* v. *Hutton, supra.*)

The judgments are affirmed.

Pullen, P. J., and Tuttle, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 14, 1941.