[L. A. No. 22157.   In Bank.   May 27, 1952.]

FRANCES SOMMERFIELD SOLON, Appellant, v. ROSE LICHTENSTEIN, Individually and as Coexecutor, etc., Respondent.

Perry Bertram for Appellant.

Fred W. Heatherly for Respondent.

SPENCE, J.—Plaintiff brought this action to establish a constructive trust in certain personal property which defendant held in joint tenancy with her father, Eugene Parisek, now deceased. At the close of plaintiff's evidence, the trial court granted defendant's motion for a nonsuit, and plaintiff appeals from the ensuing judgment. She contends that such ruling violates the settled principle that the trial court should deny a motion for nonsuit "if there is . . . any substantial evidence, which, with the aid of all legitimate inferences favorable to the plaintiff, tends to establish the aver-

ments of the complaint.'' (9 Cal.Jur., § 36, pp. 558-559; *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 837 [161 P.2d 673, 164 A.L.R. 1]; *Golceff* v. *Sugarman*, 36 Cal.2d 152, 153 [222 P.2d 665].) In this regard she also maintains that the trial court erred in excluding certain testimony upon the theory that it constituted a privileged communication arising from an attorney-client relationship. (Code Civ. Proc., § 1881, subd. 2.) Viewing the evidence in the light most favorable to plaintiff, disregarding conflicts, and construing all inferences which may reasonably be drawn in her favor (*Hinds* v. *Wheadon*, 19 Cal.2d 458, 460 [121 P.2d 724]; *Lawless* v. *Calaway*, 24 Cal.2d 81, 85 [147 P.2d 604]; *Lashley* v. *Koerber*, 26 Cal.2d 83, 84-85 [156 P.2d 441]), it appears that plaintiff's position must be sustained.

Eugene Parisek died in Los Angeles in March, 1948, at the age of 83 years. Plaintiff is his granddaughter. Her mother, who had died some 10 years earlier, and defendant were his only children. By the terms of his will deceased divided his property equally between plaintiff and defendant, providing that one-half of his estate should go directly to defendant and the other half should go to defendant and a third person as cotrustees for the benefit of plaintiff until she reached the age of 32 years, when distribution should then be made to her. It does not appear what property deceased left at his death other than four joint tenancy accounts. Two of these accounts consist of government bond holdings, each in the approximate value of $15,000, one standing in the names of deceased and plaintiff and the other in the names of deceased and defendant. There is no dispute as to these accounts.

The property here in question consists of the two other joint tenancy accounts, both standing in the names of defendant and deceased at the time of his death: one created in December, 1934, covering deceased's bank account and the other established in April, 1947, covering his investment securities account. During the lifetime of deceased, defendant did not deposit or withdraw any money from the bank account, and she did not transact any business regarding the securities account. At the time of deceased's death, there was a balance of $1,792.20 in the bank account; and in the stock investment account there were securities valued at $14,239.79 and $180 on deposit.

Plaintiff seeks to establish a one-half interest in these two joint tenancy accounts. Her complaint charges that

prior to April, 1947, deceased had become ill and had created the stock joint tenancy for his convenience in securing cash for personal expenses in the event he could not go to the bank or his broker's office; that defendant, his daughter, occupied a confidential relationship with him and spent considerable time with him; and that it was expressly agreed between them that the joint tenancy arrangement was "for convenience only," and that upon his death, "all of his property," including these two joint tenancy accounts, would be distributed equally between plaintiff and defendant as the division of his estate was made by his last will. The prayer asks that defendant be declared a constructive trustee of one-half of each of these joint tenancy accounts.

It appears from the evidence that a close confidential relationship existed between deceased and plaintiff, who lived in Chicago, and between deceased and defendant, who resided in Santa Barbara. The existence of this confidential relationship is admitted by defendant. Plaintiff testified that when she had visited deceased in 1941 at his invitation, deceased had told her in a number of conversations that he had arranged to divide everything he owned between her and defendant—even pointing out furnishings, personal jewelry and collector's items for inclusion in such equal division. This testimony was supported by the testimony of a Mr. Friend, a lifelong intimate of deceased, who testified that on a number of occasions after the death of deceased's wife in 1935, deceased had told him that he (deceased) was leaving everything he had—property, stocks, bonds, furniture, all his possessions—to plaintiff and defendant equally. He testified further that in April, 1947, deceased made similar statements, saying, in particular, that "his government bonds" were "taken care of . . . because they were in his and his daughter's name and in his and his granddaughter's name, and all other stock including personal property was to be divided equally between those two because that was all he had in the world"; that at that time deceased also specifically mentioned "stocks and other bonds, and cash in the bank" which he wanted equally divided between his daughter and granddaughter.

Deceased's stockbroker testified that in 1946 deceased began to talk to him about saving inheritance taxes; that he then "pointed out the advantages of a joint tenancy"; and that in April, 1947, about the time deceased transferred his securities from his personal account to the joint tenancy with de-

fendant, deceased told him that if anything happened to him, deceased, he wanted to leave the securities to defendant.

Plaintiff also sought to introduce the deposition of a Mr. Sirota, an attorney from Illinois, into evidence. The court sustained defendant's objection to the offer of that testimony on the ground that it constituted a privileged communication between a client and an attorney. Plaintiff thereupon offered to prove the following facts through this witness: that on the occasion of Mr. Sirota's visit to Los Angeles in August and September, 1947, he met the deceased; that they struck up an acquaintance by reason of the fact that he knew plaintiff, deceased's granddaughter, and her family; that deceased had certain cemetery lots in Chicago which he desired to transfer to plaintiff in exchange for her promise to care for them after deceased's death; that deceased asked him to see if plaintiff would agree to such undertaking, and if so, to make out the necessary papers; that in the course of conversation about deceased's family, deceased stated that he had "everything arranged so that everything in [his] estate" would go to plaintiff and defendant "share and share alike"; that deceased also stated that since he had had several heart attacks and on those occasions could not get to the bank, he had made an arrangement whereby defendant could draw out the funds he needed or "any stocks or bonds" that he had or "may have," and she had "access to those"; that he had "these in a joint safe account"; and that deceased further stated that plaintiff would receive one-half of what he possessed just as if her mother, his "own daughter were living"—that he had made a "definite arrangement" with defendant and "she [defendant] understands it." After returning to Chicago, Mr. Sirota communicated deceased's request to plaintiff and plaintiff promised to care for the graves. Mr Sirota then prepared the deed, sent it to a bank in California, and upon its return to him, he delivered it to plaintiff.

■ The only legal matter discussed by deceased and Mr. Sirota was the question of the transfer of the cemetery lots in Chicago. Deceased intended the instructions with regard to that matter to be conveyed by Mr. Sirota to plaintiff. The objection of a privileged statement cannot be asserted where the disclosure was made for the purpose of communication to another. (27 Cal.Jur. § 38, p. 53; *Ferguson* v. *McBean*, 91 Cal. 63, 73 [27 P. 518, 14 L.R.A. 65].) ■ The balance of the conversation between deceased and Mr. Sirota con-

cerned the deceased's family arrangements for the division of his property upon his death. It had no relation to any "professional employment" of Mr. Sirota by the deceased (Code Civ. Proc., § 1881, subd. 2) or his status as an attorney (*Collette* v. *Sarrasin*, 184 Cal. 283, 288-289 [193 P. 571]). A communication to be privileged must have been made to an attorney acting in his professional capacity toward his client. (27 Cal.Jur. §§ 36-37, pp. 50-52; *Hager* v. *Shindler*, 29 Cal. 47, 65; *Sharon* v. *Sharon*, 79 Cal. 633, 677 [22 P. 26, 131]; *Finnell* v. *Finnell*, 156 Cal. 589, 602 [105 P. 740, 134 Am.St.Rep. 143]; *Estate of Perkins*, 195 Cal. 699, 710 [235 P. 45].) According to the evidence, similar statements had been made by deceased to both plaintiff and his lifelong intimate, Mr. Friend, on several previous occasions. Manifestly such statements were not regarded by deceased as confidential upon repetition to Mr. Sirota and so were not privileged. (*People* v. *Hall*, 55 Cal.App.2d 343, 356 [130 P.2d 733].) The trial court erroneously applied the rule of a privileged communication between attorney and client in bar of Mr. Sirota's deposition.

In determining the propriety of the granting of defendant's motion for a nonsuit, we must consider separately the joint tenancy stock account and the joint tenancy bank account. The former is governed by the general rules applicable to joint tenancies in personal property, while the latter is governed by the specific statutory provisions of section 15a of the California Bank Act. (Stats. 1909, p. 87, as amended; 1 Deering's Gen. Laws, 1937, Act 652, p. 221.) Considering these accounts separately, we have nevertheless concluded that the trial court erred in granting the motion for a nonsuit as to both joint tenancy accounts here in dispute.

THE JOINT TENANCY STOCK ACCOUNT

At the time the joint stock account was opened in 1947, a close confidential relationship admittedly existed between deceased and defendant. Defendant gave no valuable consideration for deceased's transfer of his personal account into the joint tenancy holding, and she exercised no control over the property therein during deceased's lifetime. Under these circumstances the accounts appear to have been gift transactions and are governed by the rules applicable thereto.

(*Campbell* v. *Genshlea,* 180 Cal. 213, 224 [180 P. 336].)

■ Where a "gift" is made by a parent to a child between whom a confidential relationship exists, to the exclusion of another and contrary to the expressed intent of the donor, the burden is on the donee to show that the transaction was fair and free from undue influence or fraud. (*Nobles* v. *Hutton,* 7 Cal.App. 14, 20-21 [93 P. 289]; *Pleasants* v. *Hanson,* 48 Cal.App. 626, 630-631 [192 P. 183]; *Hatch* v. *Penzner,* 44 Cal.App.2d 874, 879 [113 P.2d 295]; see, also, *Johnson* v. *Clark,* 7 Cal.2d 529, 534-535 [61 P.2d 767].)

■ Since plaintiff presented substantial testimony from which it could be reasonably inferred that deceased had the intent to divide all his property, including the joint stock account, equally between plaintiff and defendant, the trial court erred in granting defendant's motion for a nonsuit. Having presented substantial evidence directly or inferentially supporting all the elements of the rule of *Nobles* v. *Hutton, supra,* plaintiff had made a prima facie case, and defendant then had the burden of showing the validity of the gift.

### THE JOINT TENANCY BANK ACCOUNT

In determining the propriety of the motion for a nonsuit as to the joint bank account, the effect of section 15a of the California Bank Act must be considered. That section provides that a deposit made by any person in the names of such depositor and others "in form to be paid to any of them or the survivor or survivors of them" shall become the "property of such persons as joint tenants," and that "[t]he making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in every action or proceeding to which . . . the surviving depositor or depositors may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

The import of the above statute was discussed in *Paterson* v. *Comastri,* S. F. No. 18092, *ante,* p. 66 [244 P.2d 902], decided this day. The only question to be discussed here is whether plaintiff has presented sufficient evidence of fraud to overcome the conclusive presumption of intent to vest title in the surviving depositor. It is our conclusion that she has.

■ In creating the conclusive presumption of intent to vest title in the surviving depositor the Legislature made two

exceptions to its application—fraud and undue influence. The surviving depositor is thus entitled to the benefit of the conclusive presumption unless he has through his own misfeasance placed himself in a better position than was intended by the deceased. (See Civ. Code, § 3517.) ■ In general, fraud will not be presumed (12 Cal.Jur. 816), but a presumption of fraud and undue influence may arise in the case of a confidential relationship from which an undue advantage was gained. (*Johnson* v. *Clark, supra,* 7 Cal.2d 529, 534; 12 Cal.Jur. 818.) ■ Here a confidential relationship was admitted, and plaintiff presented substantial evidence to show that defendant secured an advantage which was not intended. This raised a presumption of fraud and undue influence, and the burden was cast on defendant to show fairness and good faith in all respects. (*Nobles* v. *Hutton, supra,* 7 Cal.App. 14, 20-21; *Pleasants* v. *Hanson, supra,* 48 Cal.App. 626, 630-631; *Johnson* v. *Clark, supra,* 7 Cal.2d 529, 534; *Hatch* v. *Penzner, supra,* 44 Cal.App.2d 874, 879.) ■ Since a presumption of fraud and undue influence is sufficient to sustain a finding thereof (*Campbell* v. *Genshlea, supra,* 180 Cal. 213, 224), the trial court erred in granting the motion for a nonsuit. (9 Cal.Jur. 559; *Golceff* v. *Sugarman, supra,* 36 Cal.2d 152, 153.)

A factual situation somewhat similar to that presented here appears in *Estate of Gaines,* 15 Cal.2d 255 [100 P.2d 1055], where this court held that the evidence was insufficient to sustain a finding of a trust. The burden of showing that the transaction had been free from fraud and undue influence was not placed on appellant there, because, as the record in that case shows, no allegation of fraud, undue influence, or the existence of a confidential relationship had been made by respondent. The problem of this court in the Gaines case was merely to decide whether or not sufficient evidence of the existence of a trust had been presented. In the present case the problem is whether or not sufficient evidence of fraud and undue influence to support a judgment in favor of plaintiff has been presented. As indicated above, it is our conclusion that such evidence is present here in the form of a presumption of fraud and undue influence arising from the existence of a confidential relationship through which an unintended advantage has been secured.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Schauer, J., concurred.