[Civ. No. 1926.   Third Appellate District.—June 5, 1919.]

EDWIN G. FORBES, as Administrator, etc., Appellant, v. E. F. FORBES, as Administrator, etc., Respondent.

[1] TRUSTS—CONFIDENTIAL RELATIONS—BURDEN OF PROOF—EVIDENCE.
In this action to declare a trust in certain real property, involving transactions between two deceased brothers and their deceased father relative to the sale of the property and a reconveyance to one of the brothers upon the default of the purchaser, conceding that a confidential relation existed between the deceased brothers and that, therefore, the burden was upon the defendant to show that the transactions between the deceased brothers relating to the property in dispute were conducted and consummated with fairness, honesty, and good faith, the evidence was sufficient

to overcome or dispel any presumption of bad faith on the part of the brother to whom the reconveyance was made.

[2] EVIDENCE—CONTENTS OF DEED—IDENTITY OF PARTIES.—A deed is the best evidence of the contents thereof and as to the identity of the party or parties named therein as the grantee or grantees.

[3] TRUSTS — ACTION TO ENFORCE — SPECIAL DEFENSE — FAILURE OF COURT TO MAKE FINDING.—In an action to enforce a trust in real property, the plaintiff may not complain that the trial court failed to find on a special defense interposed by the defendant.

APPEAL from a judgment of the Superior Court of Yuba County. Eugene P. McDaniel, Judge. Affirmed.

The facts are stated in the opinion of the court.

Milton A. Nathan for Appellant.

W. H. Carlin and Charles W. Thomas for Respondent.

HART, J.—On the nineteenth day of August, 1889, Alexander Forbes and his two sons, E. A. and John C. Forbes, the latter known as Clarence Forbes, granted and transferred the lands and premises mentioned in the complaint and other lands to one Mary E. Wilson, for the sum of eighteen thousand dollars. Twelve thousand dollars of this amount was for the lands belonging to the two sons and six thousand dollars was for lands belonging to the father. There was paid on account of the purchase price six thousand dollars, which was divided between the grantors, and several promissory notes for the aggregate sum of twelve thousand dollars, secured by a mortgage on all the property, were executed by Mary E. Wilson and her husband. The Wilsons were unable to pay the notes and on the fifth day of January, 1891, they reconveyed all the lands to E. A. Forbes, the promissory notes were canceled and the mortgage was released. Subsequently, E. A. Forbes settled with his father for the latter's interest in the lands.

John C. Forbes died on or about the twentieth day of April, 1891, and his son, Edwin G. Forbes, was appointed administrator of his estate on the twenty-seventh day of July, 1915. E. A. Forbes died on the eighteenth day of July, 1915, and his son, E. F. Forbes, was appointed ad-

ministrator of his estate on the twentieth day of July, 1915. This action was commenced March 30, 1917.

The complaint alleged that the deed from the Wilsons to E. A. Forbes was made without the knowledge or consent of John C. Forbes, he "expecting and believing that said deed of reconveyance would be made in the name of, and would reconvey said property to," himself and E. A. Forbes; that John C. Forbes, at the time of his death, did not know that the property had been conveyed to "E. A. Forbes, individually and alone, and died in the belief and with the understanding that said property had been reconveyed to him and the said E. A. Forbes," and that they were then the owners thereof. The prayer of the complaint was that the deed from the Wilsons be declared a trust and that E. A. Forbes hold the property as a trustee for the benefit of the heirs at law of John C. Forbes; that defendant account for the rents, issues, and profits of the property and that he deed an undivided one-half interest therein to plaintiff.

The answer alleged that, prior to the twentieth day of January, 1891, E. A. Forbes settled in full with John C. Forbes and became the sole owner of said lands. It was also alleged that the cause of action was barred by the provisions of the statute of limitations.

Judgment was in favor of defendant. Plaintiff appeals from the judgment and contends: That the evidence is insufficient to sustain certain findings of the court; that the trial court erred in certain rulings on the admission of evidence; and that the court should have found upon the issue as to whether the cause of action was barred by the statute of limitations.

The portions of the findings attacked by appellant are as follows:

Finding 6, referring to the deed from the Wilsons to E. A. Forbes, stated: "There was no agreement or understanding for any reconveyance of said real property to said John C. Forbes or to any person except said E. A. Forbes."

Finding 7 was that said deed from the Wilsons "was made with the full knowledge and consent of said John C. Forbes, who at no time expected, believed, or desired that said deed of conveyance should be made in the name of himself and said E. A. Forbes."

Finding 8 was that John C. Forbes knew that said real property had been transferred to E. A. Forbes individually and alone; and that E. A. Forbes was the sole owner in fee and entitled to the possession of said lands.

It was found in finding 9 that E. A. Forbes never informed the widow of John C. Forbes that an undivided one-half interest in said property was preserved to herself or her son, Edwin G. Forbes, or to any other person than to himself.

Finding 10 was to the effect that E. A. Forbes had settled with John C. Forbes and paid to him his full interest in and to the canceled notes excepting the sum of $1,250, for which amount, at the request of John C. Forbes, E. A. Forbes, on the twenty-first day of April, 1891, delivered to the widow of John C. Forbes his promissory note payable to her and that said note was fully paid by E. A. Forbes prior to his death.

Mrs. Emma Morse, formerly the widow of John C. Forbes and the mother of plaintiff, testified: That, on or about the last day of April, 1891, E. A. Forbes gave her a note, dated January 19, 1891, for $1,250, and at the same time gave to her the following document:

"Marysville, California, January 19th, 1891.

"It is hereby understood by and between J. C. Forbes and E. A. Forbes, both of the County of Yuba, that if said E. A. Forbes, or his heirs sells the 'Forbes Ranch' in Oat Hills, in Yuba County, Cal., for $12,000 (Twelve Thousand Dollars), or more, he shall pay to said J. C. Forbes, or his heirs, the sum of Seven Hundred and Fifty ($750.00) Dollars.

"E. A. FORBES."

The only testimony adduced at the trial was that of plaintiff's mother, now Mrs. Morse, who testified in behalf of the plaintiff, that of Mrs. E. A. Forbes, relict of the defendant's intestate, and the deposition of Mrs. Mary E. Wilson, one of the grantees of the Forbes of the land in question.

The facts stated in the complaint as to the sale of the property to the Wilsons for the sum of eighteen thousand dollars, the payment by them of six thousand dollars in cash on the execution and delivery of the deed, the execution by them of a mortgage for twelve thousand dollars,

balance of the purchase, their failure to pay the notes to secure which said mortgage was given, and the reconveyance of the land by them to E. A. Forbes, who subsequently passed away, are not disputed.

Mrs. Morse's testimony, as it appears in the record before us, falls far short of sustaining the averments of the complaint. All she appears to have been able to say of the transaction between J. C. Forbes, her then husband, and the late E. A. Forbes, was that, after the death of her husband, E. A. delivered to her the promissory note for $1,250 and the conditional contract for the payment to her of the sum of $750. Although the complaint alleges that E. A. Forbes had told Mrs. Morse, after the death of J. C. Forbes, that "the undivided one-half interest in and to the above-described property was preserved to herself and her son, Edwin G. Forbes," there is not a particle of evidence supporting the claim so made. Indeed, about all that she testified to may briefly be stated as follows: That the promissory note for $1,250 was made payable in installments and that the obligation had been entirely extinguished by the payment to her of the last installment some fourteen years subsequent to the execution and delivery of the note; that no part of the $750 mentioned in the contract was paid to her; that for some years her husband had been suffering from tuberculosis; that he had been able to attend to his business until within two months of his death; that, about the 1st of March, 1891, he took a trip to Arizona; that for some time prior to her husband's death he and his family lived at the residence of E. A. Forbes in Marysville and they lived there for two weeks after Clarence returned. She said that from the time of her husband's death until the death of E. A. Forbes, in 1915, the relations between the two families were of a friendly nature, though she had not seen the family of E. A. Forbes for quite a number of years. When E. A. Forbes handed her the promissory note for $1,250, she asked him no questions, "because I trusted him to do what was right"; that he owed her nothing personally; that both the note and the contract were handed her by E. A. Forbes without comment and she received them in like manner, without comment or statement.

In rebuttal, Mrs. Morse testified that all she remembered about the contract for $750 was that when she received it E. A. Forbes had said: "Keep this contract; it will be of use to you some day." She said that both the promissory note and the contract were handed to her about ten days or two weeks after the death of her husband; that when he handed her the promissory note he said: "This is for you"; that he did not tell her to hold the contract for Edwin. The witness testified, on cross-examination, that when the note was handed her she took it and asked no questions; that she did not look to see the amount of it until later.

Mrs. Mary E. Wilson, in her deposition taken in the state of Vermont, deposed that her husband, Thomas Wilson, was dead; that she purchased the Forbes ranch for eighteen thousand dollars, paid six thousand dollars cash and gave promissory notes, secured by mortgage, for twelve thousand dollars; that no interest on the notes was ever paid and that she, her husband and her son, joined in executing the deed back to E. A. Forbes; that she knew the latter, but that he never made any statement to her concerning the interest of his brother, John C., in the property.

Mrs. Jennie E. Forbes, widow of E. A., testified: That in a general way she knew about the sale of the ranch to Mrs. Wilson; that, in January, previously to his death, Clarence Forbes had been at her residence in Marysville; that on the 3d of March, 1891, he went to Arizona for his health, and that E. A. Forbes went with him; that the latter returned on the 14th of March, and that Clarence came later, lived at her residence, and died there. She said that about the 19th of January, 1891, while Clarence was at her house, she saw him and her husband "go over the books and examine them and heard them consent to the agreement, and that they agreed to have this note drawn up that was turned over to Mrs. Forbes; . . . that the $1,250 was the difference between them, and that this note was to be drawn up in favor of his wife on account of his poor health, and he expected to take this trip to Albuquerque, and in case anything happened him on his trip it was agreed that she should have this money." The difference between J. C. and E. A., spoken of by the wit-

ness, has reference to certain indebtedness of J. C., which E. A. agreed to and did liquidate. The witness said she heard them discuss the Wilson mortgage for twelve thou-. sand dollars, and that the difference agreed upon was $1,250; that she saw the note for $1,250 on the morning after Clarence died, about the twenty-first day of April, at her residence; that E. A. Forbes handed the note to Mrs. Clarence Forbes, in the presence of the witness, and that he said: "Emma, this is yours"; that at the same time her husband handed to Mrs. Clarence Forbes the contract for $750, saying to her: "Emma, he did this for Edwin [the son of Clarence]; you keep this and put it away for Edwin."

The record presents no satisfactory explanation of what disposition was made of the contract for the conditional payment by E. A. Forbes of $750 to J. C. Forbes or his heirs. There is some testimony tending in a hazy sort of a way to show that E. A. Forbes settled an outstanding obligation against J. C. Forbes and in favor of one Phin-ingham for one thousand dollars, in consideration of the cancellation of said contract. But be that as it may, the contract is of no importance in this case, and the court so treated it by failing to make any finding with reference to it. It may be added that it does not appear that the condition upon which the $750 was to be paid ever happened.

[1] Now, even conceding it to be true, as the complaint alleges, that E. A. Forbes was the attorney and legal adviser of J. C. Forbes and that by reason of that fact a confidential relation existed between them, or that such relation is to be presumed from the relationship by consanguinity in blood between them, and that the burden was, therefore, upon the defendant to show that the transactions between the deceased brothers relating to the property in dispute were conducted and consummated with fairness, honesty, and in good faith, it cannot be doubted that the evidence, of which the above is an epitomized statement, was sufficient, if accepted by the court as exposing the real facts of the transactions (and the result shows that it was so accepted), to overcome or dispel any presumption of bad faith in said transactions on the part of E. A. Forbes raised by the law as to such transactions

executed under analogous circumstances—that is, such transactions, characterized by somewhat similar circumstances, as are treated in *Nobles* v. *Hutton,* 7 Cal. App. 14, [93 Pac 289], and in the many cases therein cited and examined, distinguishable, however, from the case at bar in one important particular, viz., that therein the property which was in controversy was transferred by gift to the defendants, whereas, in this case, there is no such element entering into the controversy.

As to the objections involving certain rulings relative to evidence, the first called to our attention and to be considered is as to the action of the court in striking out from the deposition of the witness, Mrs. Wilson, the answer returned by her to the following interrogatory propounded by the plaintiff: "What disposition, if any, was made by you of the real property described in the deed and mortgage previously referred to by you?" A. "We deeded it back to E. A. Forbes and John C. Forbes." The ground upon which the court, upon the motion of counsel for defendant, struck out the answer was that it was "incompetent, immaterial, and not the best evidence." The objection to the testimony on the last-stated ground was good. [2] Obviously, the deed itself was the best evidence of the contents of the deed and as to the identity of the party or parties named therein as the grantee or grantees of Mrs. Wilson.

What is said of the last-considered point is equally applicable to the objection that the court erred in striking out the answer made by Mrs. Morse to the following question: "What knowledge did you have?" referring to her knowledge of the conveyance by Mrs. Wilson and the parties to whom the conveyance was made, the answer being: "My knowledge was that they [meaning J. C. and E. A. Forbes] both took the property back again."

[3] The complaint by appellant that the court erred by failing to find on the defense of the statute of limitations interposed by defendant is so plainly without merit, coming as it does from the plaintiff, who, of course, desired a trial on the merits, that further comment would be superfluous. It may be said, though, that the defendant seems not to have pressed that defense, and other than what was shown in that particular by the complaint itself there was no evi-

dence to support the defense or authorize a finding thereon. But however that may be, it obviously does not lie in the mouth of the appellant (plaintiff in the case) to complain because the court omitted to notice the defense in its decision.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.